CHICAGO, R. I. & P. RY. Co. v. STATE *et al.*

No. 351.   Opinion Filed January 16, 1909.

(99 Pac. 901.)

1.    CARRIERS—Corporation Commission—"Such Public Service Facilities and Conveniences, as May Be Reasonable and Just." The phrase, "such public service facilities and conveniences as may be reasonable and just," as used in section 18, art. 9, of the Constitution (Bunn's Ed. sec. 222), means everything incident to the general, prompt, safe, and impartial performance of the duties to the public at large imposed by the state, in the proper exercise of its police power, upon transportation or transmission companies.

2.    SAME—Equal Facilities. Section 18 ,art. 9, of the Constitution (Bunn's Ed. sec. 222), does not require transportation or trans-

mission companies at their own expense to provide such equal facilities and conveniences between private persons or corporations as to overcome or equalize disadvantages caused by dissimilarity of location.

3. **RAILROADS—Side Tracks—Construction.** Private persons or corporations desiring the construction of side tracks to accommodate their particular industries should proceed under Const. art. 9, sec. 33 (Bunn's Ed. sec. 246), requiring such persons or corporations to pay the expense of such construction, and not under section 18 (Bunn's Ed. sec. 222), relating to the establishment of public service facilities and conveniences.

4. **SAME—"Unlawful Discrimination."** The fact that a railroad permitted the location of an elevator, maintained by a private corporation, on the industrial track on the right of way, does not render its refusal to construct, at its own expense, a side track to a competing elevator, located off the right of way, an unlawful discrimination within Const. art. 9, sec. 18 (Bunn's Ed. sec. 222).

(Syllabus by the Court.)

*Appeal from the State Corporation Commission.*

Action by the State, the Apache Milling Company, and the Miller Grain Company against the Chicago, Rock Island & Pacific Railway Company. Judgment for plaintiffs, and defendant brings error. Reversed.

*C. O. Blake, H. B. Low, T. R. Beman, Dale & Bierer,* and *Benj. F. Hegler,* for plaintiff in error.

The Constitution of Oklahoma, art. 9, § 33, provides the manner and terms for securing the side track demanded by complainants, the track being sought for a private and not a public use. To deprive the officers of the railway company of the franchises and powers vested in them by law to exercise their discretion and judgment in the location and construction of facilities for the performance of its function as a public carrier and to order the company to construct a switch at the particular place ordered in this case is in violation of Art. 14, Amendments to the Constitution of the United States. *Mo. Pac. Ry. Co. v. Nebraska,* 164 U. S. 403; *Loan Ass'n v. Topeka,* 20 Wall. 655.

*Charles West,* Atty. Gen., and *George A Henshaw,* Asst.

Atty Gen., for defendants in error, contended that the order of the commission is necessary for the convenience and safety of the public and a proper exercise of the police power of the state. *Wis., M. & P. R. R. Co. v. Johnson,* 179 U. S. 287; *Gladstone v. Minnesota,* 166 U. S. 427; *C., B. & Q. Ry. Co. v. Illinois,* 200 U. S. 561. The public has an interest, in the amount of competition and in the number of elevators at a shipping point; the status of shipping facilities shows discrimination on part of railway company tending to stifle competition; the order of the commission is necessary to secure equal shipping facilities. *Louisville & Nashville Ry. Co. v. Ky.,* 161 U. S. 677; *C. L. Ins. Co. v. Needles,* 113 U. S. 574; *People ex rel. v. B. & A. Ry. Co.,* 70 N. Y. 569.

KANE, J. The Apache Milling Company and the Miller Grain Company, of Apache, Okla., filed two separate complaints before the Corporation Commission, which by agreement were consolidated. The original complaint of the Apache Milling Company alleges, in substance: That there is a necessity for additional sidings or side-track facilities upon the line of the Enid & Anadarko branch of the Chicago, Rock Island & Pacific Railway Company at its station at Apache, Caddo county, Okla.; that the complainant is a corporation organized under the laws of Oklahoma, doing business at the city of Apache, and has been for more than five years last past engaged in the manufacture and sale of milling products and buying and selling grain at its elevator; that, on account of the volume of business transacted at the station of Apache, the side-track shipping facilities offered by the railway company at said station are totally inadequate; that at said station there is what is called one "house track," and one siding, the siding being the only one by which products or shipments can be received or loaded; that along said siding there are located numerous coal and storage houses, stockyards, elevators, cotton seed houses, etc., which take up practically all the loading ground on the east side of said siding, and that in wet weather it is impossible to load and unload cars on the west side of said siding; that at nearly all times said siding is almost entirely

covered with cars in transit and otherwise, and that, on account of inadequate shipping facilities at said station, complainant has, during the last five years, been to a vast and altogether unnecessary outlay of money in handling its business. There are further allegations to the effect that the business of complainant from March 1, 1907, to March 1, 1908, amounted to 216 cars, and this volume will be maintained in the future years; that petitioner has for a long time urged said railway company to furnish reasonable facilities, which it has refused, unless your petitioner would pay said railway company from twelve to fifteen hundred dollars, which in your petitioner's judgment is unfair and unjust. The relief prayed for is that an order issue directing the railway company to build and maintain a side track up to and adjoining the mill and elevator and other property of the petitioner, all of which is adjacent to and adjoining the right of way of said company.

The complainant the Miller Grain Company alleges, in substance: That it is a partnership engaged in the grain and elevator business at Apache, in the state of Oklahoma; that the elevator of said company is built on land adjoining the right of way of said railway company, about 100 feet from the main switch of defendant; that prior to building said elevator it applied to the railway company for permission to build on the defendant's right of way, which was refused; that said elevator has been built about 18 months; that during that time 135,000 bushels of grain have been handled and transferred to defendant's cars; that by permission of the railway company there is an elevator in the town of Apache located on its right of way, which location gives it an advantage over complainants; that the complainants have applied to the railway company repeatedly to have a switch built and constructed to its elevator, which defendant has refused to do. Complainants say they believe they are entitled to every privilege and advantage given their competitor, and since their competitor was permitted to build on the right of way of said railway company, without cost to said elevator company, com-

Vol. 23—7

plainants think they are entitled to build on the right of way without cost to them. The prayer for relief is that the commission make an order commanding said railway company to build and construct a switch to complainant's elevator, without cost to complainant.

Afterwards, the Apache Milling Company filed a supplemental petition, which alleges, in substance: That they applied to the defendant railway company for permission to build an elevator on defendant's right of way, which was refused; that the railway company is a common carrier, and has permitted another elevator in the town of Apache to be constructed on the right of way, which gives them an advantage over complainants, and is an unjust and unfair discrimination in the loading and unloading of grain; that the complainants are compelled to haul their grain to the siding in wagons and scoop the grain from the wagons to the cars at considerable cost—all of which prevents them from having fair competition with the elevator on the right of way. The relief prayed for is that the railway company be required to answer the charges herein, and that, after due hearing and investigation, an order be made giving the complainants such relief as the Commission may deem necessary and just in the premises.

The part of the answer of the railway company necessary to notice here denies it has intentionally discriminated or is discriminating against any shipper or shippers, and admits that it is transacting business as charged by the complainants, as a railway company and common carrier, and that its team track facilities have, owing to the growth and development of the town and increase of business, become inadequate; that, upon its attention being called to that fact, it had decided upon increasing its team track facilities at that point, so as to furnish adequate loading and unloading track room for the unloading of all commodities that may be shipped or received, and is willing to, and intends to, in the immediate future, so extend and increase its team track facilities as to furnish good, adequate accommodations for the business that may reasonably be expect-

ed, with convenience to the public and shippers of all business that may arise at said point. The railway company claims the right to proceed with the making of such improvements and extensions in such manner as will best serve the interests of the shippers, not unduly favoring any shipper or shippers, and on such plans as may be approved by the civil engineers having charge of the construction and maintenance of its railway. It denies the right of any shipper or shippers to select a particular location convenient for their individual purposes and compel the defendant, by complaint to the Commission and proceedings before it, to accept such location and construct its additional tracks thereon for the special convenience of such selecting shipper.

The reply to the answer alleges, in substance, that the extension of the delivery track proposed by the railway company is located at an inaccessible place for the petitioners, and for the general public, and would not add any material convenience to the shipping public; that the place most accessible and most convenient to the shippers generally and those receiving freight is on the east side of the right of way, and the same being on higher ground and not susceptible to mud, and other impassable obstacles that now surround the track being used for this purpose. The prayer to this reply is that the railway company be required to build its additional team tracks on the east side of the right of way. Upon the issues thus joined, the cause proceeded to trial.

After hearing the evidence adduced by the parties in support of their various contentions, the Corporation Commission made the following order:

"On the 9th day of May, case coming on to be heard, the complainant was represented by Geo. A. Henshaw, Assistant Attorney General, and the defendant by C. O. Blake, attorney. It was admitted during the progress of the trial by the defendant that switching facilities at the town of Apache were inadequate and insufficient for the needs of the people of Apache and vicinity. It was further established that the location of the switch now at Apache was on low ground, and was inconvenient to ship-

pers in loading and unloading cars on account of mud, and that the Commission finds that the extension of the present switch in either direction or in both directions would not give the proper relief, and finds from the evidence that a switch track should be built on said ground, and along the east line of the right of way or depot grounds in the town of Apache, as indicated by a yellow line on the blue print submitted by the railway company, now on file in the office of the Commission.

"It is hereby ordered by the Corporation Commission of the state of Oklahoma that the defendant, the Chicago, Rock Island & Pacific Company, build and operate a switch track in the town of Apache on the east line of the depot grounds and right of way of said defendant, by yellow line on blue print heretofore mentioned. That said switch shall be built and ready for operation as above indicated by the 1st day of August, 1908. It is so ordered."

From this order the railway company appealed to this court, assigning various grounds of error. The principal contention of counsel is that all the power the Corporation Commission posses ses in this particular case is by virtue of the terms of section 33, art. 9, of the Constitution (Bunn's Ed. § 246), which provides, in part, that:

"Any person, firm, or corporation owning or operating any coal, lead, iron or zinc mine, or any saw mill, grain elevator, or other industry, whenever the Commission shall reasonably determine that the amount of business is sufficient to justify the same, near or within a reasonable distance of any track, may, at the expense of such person, firms, or corporation build and keep in repair a switch leading from such railroad to such mine, saw mill, elevator or other industry; such railroad company shall be required to furnish the switch stand and frog and other neces sary materials for making connection with such side track or spur under such reasonable terms, conditions and regulations as the said Commission may prescribe, and shall make connection therewith. The party owning such line, saw mill, elevator or other industry shall pay the actual cost thereof."

On the other hand, the Assistant Attorney General in his oral argument and printed brief maintains that it is quite clear that, if the Corporation Commission had authority to make the order

complained of, such authority is derived from section 18, art. 9, of the Constitution (Bunn's Ed. § 222), which provides, in part that:

"The Commission shall have the power and authority and be charged with the duty of supervising, regulating and controlling all transportation and transmission companies doing business in this state, in all matters relating to the performance of their public duties and their charges therefor, and of correcting abuses and preventing unjust discrimination and extortion by such companies; and to that end the Commission shall, from time to time, prescribe and enforce against such companies, in the manner hereinafter authorized, such rates, charges, classifications or traffic, and rules and regulations, and shall require them to establish and maintain all such public service, facilities, and conveniences as may be reasonable and just, which said rates, charges, classifications, rules, regulations, and requirements, the Commission may, from time to time, alter or amend. All rates, charges, classifications, rules and regulations adopted, or acted upon, by any such company, inconsistent with those prescribed by the Commission, within the scope of its authority, shall be unlawful and void. The Commission shall also have the right, at all times, to inspect the books and papers of all transportation and transmission companies doing business in this state, and to require from such companies from time to time, special reports and statements, under oath, concerning their business; it shall keep itself fully informed of the physical condition of all the railroads of the state, as to the manner in which they are operated, with reference to the security and accommodation of the public, and shall, from time to time, make and enforce such requirements, rules and regulations as may be necessary to prevent unjust or unreasonable discrimination and extortion by any transportation or transmission company in favor of, or against any person, locality, community, connecting line, or kind of traffic, in the matter of car service, train or boat schedule, efficiency of transportation, or transmission, or otherwise in connection with the public duties of such company."

His contention, as stated in his brief, is that:

"The clause, 'and shall require them to establish and maintain all such public service facilities and conveniences as may be reasonable and just,' etc., and clause, 'from time to time make and enforce such requirements, rules and regulations as may be necessary to prevent unjust or unreasonable discriminations and

extortion by any transportation or transmission company in favor of or against any person, locality, community, connecting line, or kind of traffic, in the matter of car service, train or boat schedule, efficiency of transportation or transmission, or otherwise, in connection with the public duties of such company.' The word 'otherwise,' in that clause, certainly covers all discriminations that may be the result of any action on the part of those in charge of a public service utility, whether such discrimination be direct or indirect; any favoritism that may grow out of the use and privileges extended to shippers by which such shipper receives an advantage over other shippers, who are denied this privilege, is a discrimination."

It is obvious that the original complaint of the Apache Milling Company does not state facts sufficient to entitle it to the relief prayed for under section 18, art. 9. *supra,* and its amended complaint and the complaint of the Miller Grain Company are based upon the theory that the refusal of the railway company to permit them to erect their places of business upon its right of way, and having permitted another company to do so, constitutes a discrimination against them, which the railway company is bound to abate by giving them the side-track facilities prayed for. The reply is the only pleading which in any way pretends to state facts sufficient to bring the case within the purview of section 18, *supra.*

There is no material dispute between the parties as to the facts disclosed by the evidence, which may be briefly stated as follows: The railway runs nearly north and south through the town of Apache; it was constructed by the Enid & Anadarko Railway Company, under the grant of the act of Congress, of February 28, 1902, c. 134, 32 Stat. 43, entitled, "An act to grant the right of way through the Oklahoma Territory and the Indian Territory to the Enid and Anadarko Railway Company, and for other purposes." The town is built on a hill or ridge, and has a heavy western slope, which ends west of the station grounds and tracks of the railroad. The railroad company has station grounds at that point 300 feet wide and half a mile long. The station grounds were partly graded to make a grade for the

tracks. There is at that point a main line track, a passing track to the west, and a loading track to the east. Along this loading or house track were located the elevator of the Chickasha Milling Company, coalhouses, stockyards, Stephenson-Brown Lumber Company, and some other structures. About 100 feet to the east of this track is the east line of the right of way, and along it the Apache Milling Company, the Miller Grain Company, and the Planters' Gin Company located their respective plants. The house track was made by grading into the side of the hill, and cars are loaded and unloaded from the institutions located on the right of way on the east side of this track and from wagons on the west side of it. These tracks were graded with the main track between the switches higher, but in the intervening years the water has washed down from the hillside so that in times of heavy rains the ground between the main track and this industrial track is exceedingly muddy, making it difficult to unload wagons there. It is conceded by all parties that the growth of the town and surrounding country has made it necessary for more side track to accomodate the business at this point. Prior to September, 1907, the Apache Milling Company made application for a spur track to its industry, and the division freight agent of the railway company offered to construct such a track 800 feet long for the actual cost thereof. The Apache Milling Company declined to pay the cost of the track, but demanded that the tract be constructed at the cost of the railway company, as did also the Miller Grain Company. The railway company refused these demands, although recognizing that more side-track facilities at Apache are necessary. The railway company concedes the necessity for additional public facilities, but contends that, on account of the extreme grade which would be necessary on account of the necessity of cutting into the hillside, to construct the track anywhere east of the present industrial track, would make it necessary for the company to expend a much larger sum of money. It therefore proposed to construct an industrial track which would be on ground, when graded, more nearly level and

with a better grade, a length of about 800 feet. The evidence shows that the track which complainants demand, if constructed from the north to their industries, would cost $2.852.25, and if constructed from the south $2,353.02, and that the additional track which the railway company proposes to construct would cost $1,332.03. The evidence further shows that the Apache Milling Company has been in the grain business at Apache for 5 years, and that for the year ending March 1, 1908, they shipped 189 cars of grain in and out and 22 cars of coal shipped in. The Miller Grain Company shipment for the year ending October 6, 1907, was 84,000 bushels or 84 cars. Both companies show that they have an expense of from about 1/2 to 1 1/4 cents per bushel in the handling of their grain more than they would have, or the Chickasha Milling Company has paid, to handle the grain from the elevator into the cars; and that it would equalize this disparity if they had the side track where they demand it, along the line ordered by the Corporation Commission.

To our minds the foregoing facts place the case squarely within the purview of section 33, art. 9, *supra.* The general public is not demanding a side track to these particular industries nor is it clear that the construction of such a side track would particularly accommodate any considerable number of the people outside of the complainants, or facilitate the prompt, safe, and impartial performance of the duties to the public at large imposed upon the railway company. The phrase, "such public service facilities and conveniences as may be reasonable and just," as used in section 18, art. 9, of the Constitution, means everything incident to the general, prompt, safe and impartial performance of the duties to the public at large imposed by the state, in the proper exercise of its police power, upon transportation or transmission companies. The Supreme Court of the United states in *Wis. M. & P. R. R. v. Jacobson,* 179 U. S. 287, 21 Sup. Ct. 115, 45 L. Ed. 194, and *Gladson v. Minnesota,* 166 U. S. 427, 17 Sup. Ct. 627, 41 L. Ed. 1064, held that the power of the state to require facilities for the convenience of the public is as broad and ample

as the police power. This power, however, should not be extended to bring within its scope private persons or corporations. The police power of a state is exclusively for the protection of the public welfare, and cannot fairly be invoked except to promote the public convenience, the general prosperity, the public health, the public morals, or the public safety. *C. B. & Q. Ry. Co. v. State of Illinois,* 200 U. S. 561, 26 Sup. Ct. 341, 50 L. Ed. 596. The track demanded is not to our mind in any sense a public track. The prayer of the Apache Milling Company is that the side track be ordered to be so built that it will furnish the petitioner reasonable loading and unloading facilities by having the same run up to their elevator and other property. The prayer of the Miller Grain Company is that an order be made commanding the said railway company to build and construct a switch to complainants' said elevator without cost to the complainants. Section 18, *supra,* does not contemplate that private persons or corporations may require a side track to be built to accomodate their industries at the cost of the railway company. Such a construction of the section would work an injustice to the railway company, as well as to the general public, who ultimately would be required to compensate the company for such outlay. Section 33, *supra,* completely covers such cases, and that is the section the complainants should have proceeded under to secure the relief prayed for.

Counsel for the Corporation Commission further contends that the railway company having permitted the Chickasha Milling Company to locate its elevator upon the industrial track on the right of way, and refused to permit the complainants to do so, it is bound to furnish a side track to the complainants' places of business, which are off the right of way, in order to afford them equal facilities with the Chickasha Milling Company. *Mo. Pac. Ry. Co. v. Nebraska,* 164 U. S. 403, 17 Sup. Ct. 130, 41 L. Ed. 489, is a case which seems to us to be decisive of the question now under consideration. It seems that in 1887 the Legislature of the state of Nebraska passed an act creating the State Board of Transportation, giving it "general supervision of all railroads op-

erated by steam in the state." One Hollenbeck and others presented a complaint before the commissioners demanding the right to locate and erect an elevator on the right of way of the Missouri Pacific Railway company at Elmwood station, of sufficient capacity to store from time to time the cereal product of the farms of complainants and their neighbors, and alleging that the elevators then located on the right of way of defendant at Elmwood were wholly insufficient to afford a market for the grain of complainants, and that the refusal of the railway company to lease a location for an elevator as aforesaid was an unjust discrimination against them. The Board of Transportation Commissioners heard the complaint, and found that it was necessary for the convenience of the public and shippers of grain that another elevator be erected and operated at Elmwood Station; that the railway Company had permitted two elevators to be erected upon its grounds at said station, and the same were being operated; and that it refused the complainants the same privilege, thus discriminating against them. Whereupon the Transportation Commissioners ordered that the defendant railway company cease discriminating against the complainants, and grant them the right and privilege of erecting an elevator upon its ground and station adjacent to the respondent's track. The railway company refused to comply with this order, and a petition in mandamus was presented to the Supreme Court of Nebraska to compel compliance with the order. The Supreme Court of Nebraska awarded the peremptory mandamus prayed for, and the railway company sued out a writ of error to the Supreme Court of the United States. The Nebraska statute authorizes the Transportation Commission, upon complaint in writing concerning lack of facilities or accommodations furnished by railway companies for comfort or convenience or concerning any unjust discrimination against any person, firm, or corporation, or locality, in rates, facilities furnished, or otherwise, whenever in its judgment same were necessary, to order the railway company to furnish such facilities as were necessary to secure the safety, comfort, accommodation, and convenience of the public

and individuals, and to prevent unjust discrimination against persons or places, etc. Mr. Justice Gray, who delivered the opinion of the court, in reversing the Supreme Court of Nebraska, says:

"A railroad corporation doubtless holds its station grounds, tracks, and right of way as its private property, but for the public use for which it was incorporated; and may, in its discretion, permit them to be occupied by other parties with structures convenient for the receipt and delivery of freight upon its railroad, so long as a free and safe passage is left for the carriage of freight and passengers. *Grand Trunk Railroad v. Richardson*, 91 U. S. 454, 23 L. Ed. 356. But how far the railroad company can be compelled to do so, against its will, is a wholly different question.

"Upon the admitted facts of the case at bar, the railroad company had granted to two private firms the privilege of erecting elevators upon its right of way at Elmwood station, and had refused an application of other private persons, farmers in the neighborhood, for the privilege of erecting on that right of way a third elevator of sufficient capacity to store from time to time the grain produced upon their farms and upon those of their neighbors. * * *

"The only particular alleged in the complaint, and the only one, therefore, presented for our consideration in this case, in which the railroad company is supposed to have made an unjust discrimination against the complainants. or to have subjected them to an undue and unreasonable prejudice and disadvantage, in respect to traffic facilities, over other locations, or to have given an undue and unreasonable preference to other persons, is the refusal of the railroad company to grant to the complainants a location upon its right of way for the purpose of erecting an elevator thereon upon the terms and conditions upon which it had previously granted to other persons similar privileges to erect two other elevators. The petitioners were merely private individuals, voluntarily associated together for their own benefit. They do not appear to have been incorporated by the state for any public purpose whatever, or to have themselves intended to establish an elevator for the use of the public. On the contrary, their own application to the railroad company, as recited in their complaint to the Board of Transportation, was only for a location, on the right of way at Elmwood station aforesaid, for the erection of an elevator of sufficient capacity to store from time to time the cereal

products of the farms and leaseholds of complainants aforesaid, as well as the products of other neighboring farms.

"To require the railroad company to grant to the petitioners a location on its right of way for the erection of an elevator for the specified purpose of storing from time to time the grain of the petitioners and of neighboring farmers is to compel the railroad company, against its will, to transfer an estate in part of the land which it owns and holds, under its charter, as its private property and for a public use, to an association of private individuals, for the purpose of erecting and maintaining a building thereon for storing grain for their own benefit, without reserving any control of the use of such land, or of the building to be erected thereon, to the railroad company for the accommodation of its own business or for the convenience of the public."

The industries the complainants are engaged in are not public enterprises under the laws of Oklahoma; they are purely private in their nature. In that respect the case at bar falls fully within the rule laid down in the Nebraska case, so far as the right of the complainants to the use of the right of way of the railway company is concerned.

We do not believe the refusal of the railway company to build a side track at its expense to the industries of complainants amounts to the discrimination contemplated by the Constitution. Section 33, *supra,* provides an adequate means of overcoming the disadvantages the complainants are under by reason of their location. Section 18, art. 9, of the Constitution, does not require transportation or transmission companies at their own expense to provide such equal facilities and conveniences between private persons or corporations as to overcome or equalize such disadvantages.

Taking this view of the case, it follows that the order of the Corporation Commission must be reversed, and an order entered in this court denying the complainants the relief prayed for.

All the Justices concur.