JOHN B. TURNER, Chief Justice.
JESSE J. DUNN,
SAMUEL W. HAYES,　　　 } Justices.
MATTHEW J. KANE,
R. L. WILLIAMS,

### ST. LOUIS & S. F. R. CO. v. SUTTON et al.

No. 2156.　Opinion Filed February 28, 1911.

On Rehearing, May 9, and November 14, 1911.

(119 Pac. 423.)

1. RAILROADS—Depot Facilities—Common Law. Under the common law, a carrier was under no obligation to provide buildings for the receiving, handling and storing of freight, or for the accommodation of passengers awaiting passage.

2. SAME—Constitutional Provisions. By section 26, article 9, of the Constitution of this state, the duty is expressly imposed upon every railroad company to provide and maintain adequate, comfortable, and clean depots and depot buildings at its several stations for the accommodation of passengers, said depot buildings to be kept well lighted and warm for the comfort and accommodation of the traveling public.

(a) Said railway companies by said section are further required to keep and maintain adequate and suitable freight depots and buildings for the receiving, handling, storing and delivering of all freight handled by such roads.

3. SAME—Duties and Powers of Corporation Commission. By section 18, article 9, of the Constitution of this state, the Corporation Commission is not only empowered, but it is also made its duty, to

St. Louis & S. F. R. Co. v. Sutton et al.

require every railroad company to perform the duty imposed upon it by section 26 of said article, the only limitation upon the action of said commission, in such respect, being that it shall be reasonable and just.

4. SAME—Power to Specify Materials. Said commission being so authorized to require railway companies to establish, construct, and maintain depots, it may, by order, designate the place, and after the plans and specifications are submitted by the railway company, it may approve or reject the same in toto, or reject in part and amend in part, specifying the kind of material to be used, the limitation being that the order in that respect must be reasonable and just.

5. SAME—Orders of Commission—Reasonableness—Appeal. The plans and specifications and the size of the depot being agreed upon both by the commission and the railway company, the only controverted proposition being as to whether it should be built a frame, as proposed by the railway company, or a cement, or brick, depot, as directed by the Corporation Commission, there being nothing to show 'that the income from the road will not justify such expenditure out of the current expense fund—held, that the order of the Corporation Commission directing it to be constructed out of brick or cement will not be disturbed.

(Syllabus by the Court.)

*Appeal from Corporation Commission.*

From an order of the Corporation Commission in favor of J. W. Sutton and others, against the St. Louis & San Francisco Railroad Company, the railroad company appeals. Affirmed.

*W. F. Evans* and *R. A. Kleinschmidt,* for appellant.

*Chas. West,* Atty. Gen., and *Chas. L. Moore,* Asst. Atty. Gen., for appellees.

WILLIAMS, J. This is an appeal from an order of the commission requiring the appellant to erect a depot at Tahlequah, to be constructed of brick, cement, or other material of that character, the cost of which would approximate $10,000. Appellant's depot at the city of Tahlequah, having been burned about May 22, 1910, has not been rebuilt, box cars, during the interval, being used for depot accommodations. The average receipts at said station per month since that time are about $7,800 for freight and $4,500 for passengers.

At said city a water and light system is in operation and a

sewer system is under construction. These conveniences may reasonably be placed in the depot.

The site proposed, and to which there is no objection by the appellant, is about one-half mile from the business section of the city, the resident population of which is about 3,000 people.

There is no error assigned by the appellant as to the size or specifications required, other than as to the material to be used. The appellant contends that it ought to be permitted to construct a frame building at a cost of about $5,000, instead of a brick or concrete one of the same size, etc., which would cost approximately $10,000. Appellant, in its brief, says:

"Therefore, the single issue presented in this case is whether, instead of the depot proposed by the defendant, it should be, and can be, required to construct one of the same size, arrangement and conveniences, but of material such as brick, stone or cement, instead of frame."

Appellant further insists that "it is specifically found that the plans, as submitted by the company, are reasonably adequate so far as size and arrangements are concerned."

It is a valid exercise of the police power for a state to require railway companies to establish stations where the public necessity and convenience require it. *Minn. & St. L. R. R. Co. v. Minnesota, etc.,* 193 U. S. 53, 48 L. Ed. 614, 24 Sup. Ct. 396; *Louisiana & Ark. Ry. Co. v. State,* 85 Ark. 12, 106 S. W. 960; *Com. v. Eastern R. R. Co.,* 103 Mass. 254, 4 Am. Rep. 555; *R. R. Comrs. v. P. & O. Central R. R. Co.,* 63 Me. 269, 18 Am. Rep. 208.

In *Atchison, Topeka & Santa Fe Ry. Co. v. State et al.,* 23 Okla. 510, 101 Pac. 262, it was held by this court that, by virtue of the provisions of the Constitution, the Corporation Commission was empowered to require a transportation company, in the performance of its duties as a public service corporation, to establish and maintain a flag station at a certain point designated by the commission. The order of the commission in *K. C., M. & O. Ry Co. v. State et al.,* 25 Okla. 715, 107 Pac. 912, in requiring said railway company to establish a station at a designated point,

was sustained on the theory that a depot was a facility.   See, also, *M., K. & T. Ry. Co. v. State,* 24 Okla. 339, 103 Pac. 613; *M., O. & G. Ry. Co. et al. v. State, infra,* 119 Pac. 117.

Section 26, article 9, of the Constitution, provides as follows:

"It shall be the duty of each and every railway company, subject to the provisions herein, to provide and maintain adequate, comfortable and clean depots, and depot buildings, at its several stations, for the accommodation of passengers, and said depot buildings shall be kept well lighted and warmed for the comfort and accommodation of the traveling public; and all such roads shall keep and maintain adequate and suitable freight depots and buildings for the receiving, handling, storing and delivering of all freight handled by such roads."

Under the common law, a carrier was under no obligation to provide buildings for the receiving, handling, and storing of freight, or for the accommodation of passengers awaiting transportation. *Nashville, C. & St. L. Ry. Co. v The State,* 137 Ala. 439, 34 South. 401; *People v. New York, Lake Erie & Western R. Co.,* 104 N. Y. 58; 58 Am. Rep. 484, the syllabus of which is as follows:

"A railroad company is under no obligation to provide stations for passengers or warehouses for freight, unless expressly required by statute."

The reason for expressly imposing this duty upon every railroad company by the fundemental laws of this state is obvious. Section 18 of the Constitution empowers and authorizes and charges the commission with the duty of supervising, regulating, and controlling all railroad companies doing business in this state, in all matters relating to the performance of their public duties and in requiring them to establish and maintain facilities and conveniences.   A depot being a facility, and the duty of every railroad company to establish and maintain such facility being imposed by the fundamental law of this state, the jurisdiction of the commission to require such railroad company to comply with such duty is, therefore, by express language contained in said

section 18. The duty of the railroad company to establish and maintain a depot at this station is undoubted.

The order complained of involves the exercise of both legislative and administrative power. This the commissioners should be peculiarly fitted to do. We should ascribe to their findings such presumption. *K. C., M. & O. Ry Co. v. State et al.,* 25 Okla. 715, 107 Pac. 912.

There is no contention in the record or the brief that the business of this road at said station or the income from said line would not justify a sufficient expenditure from the current expense account to build such station of brick or cement. As to whether it is reasonably necessary to build the same of brick or cement, in order for it to be adequate and meet the needs of the public, as required by said section 26, that is a question of fact. Courts or legislative bodies, as a rule, take notice of matters of general knowledge and experience. Rice on Civil Evidence (1892), vol. 1, sec. 24 (d), p. 27; *Walker v. Village of Ontario,* 118 Wis. 571; *Payne v. McCormick Harvesting Machine Co.,* 11 Okla. 318. When such knowledge in regard to building materials, to wit, wood, brick, cement, and stone, in connection with the *prima facie* presumption in favor of said order, is considered, we are not prepared to say that it can be found by this body to be unreasonable. *K. C., M. & O. Ry. Co. v. State et al.,* 25 Okla. 723, 107 Pac. 915; *M., K. & T. Ry. Co. v. State,* 24 Okla. 337, 103 Pac. 613.

The city of Tahlequah, in which this railroad depot is to be constructed, has been for over seventy years the capital of the Cherokee Nation. It was there, in convention on the 6th day of September, 1839, that the Cherokee Constitution was framed, probably the second written constitution framed and promulgated by this tribe or nation of Indians. (Removal of the Cherokee Indians from Georgia, by Lumkin—Dodd, Mead & Co., N. Y.—p. 42, vol. 1.)

In addition, said city is also the county seat, or, as our Anglo-Saxon ancestors in the mother country would say, "the shire town," of Cherokee county. Also, the second Legislature

of this state, recognizing this historic spot and the environments thereof, located there the Northeastern State Normal School. By reference to the map and the special federal census of 1907, we ascertain that this city is the center of a considerable area and population within this state formerly comprising the Cherokee Nation. It is also disclosed from the record, that appellant's line of railway is the only railroad touching this city.

In *Louisiana & Ark. Ry. Co. v. State*, 85 Ark. 12, 106 S. W. 960, it is said:

"So if, after considering all the facts and circumstances, giving due consideration to the determination of the Legislature and resolving every doubt in its favor, the court should be convinced that there was no public necessity for a station there, and that the result of enforcing the act would be to put' the defendant to large expense without corresponding benefit *either to it or the public*,. then the Legislature had no right to make such requirement * * *. The fact, if proved, that the cost of erecting and maintaining the station would be greatly in excess of and out of proportion to the revenues to be possibly derived from the business at that place does not of itself render the requirement unenforceable. That fact, however, would be important for the court to consider in determining whether or not the requirement was arbitrary and unreasonable, and whether or not there is any corresponding necessity for a station."

In *Morgan's La. & T. R. & S. S. Co. v. Railroad Commission*, 109 La., at page 262, it is said:

"The conflicting interests between the corporations and the state are safeguarded by the officers of the former, on the one hand, and by the railroad commission, on the other. The power, authority, and duty of the latter are not limited merely to matters affecting the public safety or the public health. They extend also to matters concerning public comfort and public convenience, and in the consideration of matters of comfort and convenience the number of persons who may be concerned or interested in some particular matter at some particular point enter as important factors in determining what is proper to be done. The commission cannot ignore the comfort and convenience of numbers of citizens on a line of travel or conveyance to base their action exclusively · upon a consideration of the amount of dollars and cents which may be involved. As a matter of course, the com-

mission could not, even under expressly delegated powers, act arbitrarily, in manner such as to trench upon the rights of corporations secured to them by law; but, within certain limits, though their action and orders are all subject to review, they are not all subject to reversal. In the present instance it cannot be claimed that the Southern Pacific Road, either in the operation of its line as a whole, or that part of it which falls within the limits of Louisiana, has not been and is not remunerative; nor can it be said that the Morgan Railroad Company is not a paying corporation. It is not claimed that the order complained of in this case, carried into execution, would have the effect of changing the situation in this respect. The utmost claimed is that a small sum, not exceeding five or six hundred dollars in amount, which the commission's order would cause to be expended at Berwick City, and the small amount which will be required to keep an agent at that place, will reduce their profits for a trifling amount. The objection seems to be aimed rather at the place where this money is ordered to be expended, and the inconveniences to which they will be subjected, than to any effect, or any general effect, which the expenditure will have upon the profits of the roads. It is not claimed, nor is there any evidence in the record which would tend to show, that the commission has, by its orders or rulings as to other places along the roads, in respect either to depots or other matters, brought itself within the limitation placed upon it of not trenching upon the plaintiff's legal rights. So far as we know, the order complained of may be the only one as to betterments which the commission has given. We do not think the point is made that, after the business of a railroad corporation has made it fairly remunerative, the commission is without general authority to direct that a portion of the 'surplus' profits (if that expression can be used) should be applied to the promotion of the comfort and convenience of the people along the line of road. When such a point in the business of the road is reached, the rights of the 'general public' come clearly into view, and it is not for the railroad, but for the commission, to determine how, in what way, and in what place this money is to be expended so as to best subserve their interest."

See, also, *People v. President, etc., Delaware & H. Canal Co.,* 52 N. Y. Supp., page 850, 165 N. Y. 362; *Mayor and Aldermen of Worchester v. Bd. of R. R. Comm'rs.,* 115 Mass. 161; *Crowell v. Londonberry,* 63 N. H. 48.

The question of removing or destroying a facility that can by additional expense be made adequate, and replacing it with one of a different material at an additional expenditure is not involved in this case. The expense of heating and insurance, as well as the benefit to the public, may be considered in determining as to the unreasonableness of the order. Such matters are peculiarly for the consideration of parties especially skilled and adapted for passing on such administrative or legislative matters. Though this may be construed as an item of expense, it is also a betterment, increasing the value of the road as a property and making it less expensive and easier to maintain and keep such station in repair.

If, when you consider the income from the passenger and freight business derived from this station, together with its present necessity, it should appear to be unreasonable to make such an outlay of expense in such improvement, then this order should not stand. For the appellant to assert that it has an arbitrary right to name the kind of material that it will build this station of, when it appears that it would be of more benefit to the public to build it of other material, and at the same time the appellant's interest would be conserved by having a permanent improvement maintained with less expense, we are not prepared to say that the order of the commission is unreasonable. Appellant is a public service corporation, existing and doing business in this state by virtue of its laws as to eminent domain, etc., and cannot, as a rule, be required to transport passengers or freight without a just return therefor. It is a reasonable exercise of the police power to require reasonable facilities, the amount of business, and income, and size and location of the place considered.

The commission had the authority to make the order. The only question is whether, under the record, its order was unreasonable. The burden to so show is upon the appellant. It has not sufficiently discharged the same.

In the findings of facts, as made by the commission, is the following:

"The railroad company provides in its way-bills that if goods are left in the depot beyond a certain number of hours, that the owners of the goods become liable in case they are destroyed by fire and this is one. of the reasons urged why the building should be of noncombustible materials."

This finding is challenged by the appellant in its brief. There is not one scintilla of evidence in the record as to any proof being offered as to such provision in any bill of lading. If the commission thought this was a proper matter for consideration in determining what its order should be, it should have had the matter introduced in evidence when the appellant was present and had an opportunity to answer as to such evidence. Under the express mandate of the Constitution, the appellant was entitled to notice. *Hine v. Wadlington,* 27 Okla. 285, 111 Pac. 543. This notice is provided by the Constitution, that it might be present and meet the issue.

In the findings of fact, we also find the following:

"It further appears that it is the policy of the railroad company in other towns to build depots much more expensive than the one proposed at Tahlequah; that at Hugo a depot was built costing approximately $25,000, or possibly more."

This is also challenged in appellant's brief. There is not one scintilla of evidence in the record as to the cost or the size or character of the depot at Hugo. Neither the commission nor the court, as a matter of law, takes notice of such matters. If more care were given to putting the facts in the record as a predicate for the Commission's findings of fact, rather than embellishing the findings of fact by statements that are not borne out by the record, it would be easier to sustain the order. In cases where it becomes necessary to reverse the orders of the commission on account of want of care in developing facts, the fault is not with this court.

The public service corporations of this state are entitled to a just compensation for service performed. Likewise the state, as the sovereignty, has a right to require certain duties of such corporations on behalf of the people. It is the duty of this court, sitting in a reviewing capacity, whenever the facts in the

St. Louis & S. F. R. Co. v. Sutton et al.

case justify it, to see that· such duty is performed.

The order appealed from is affirmed.

TURNER, C. J., and DUNN and HAYES, JJ., concur; KANE, J., concurs in the conclusion.

ON REHEARING.

Opinion Filed May 9, 1911.

On rehearing. Remanded, with instructions.

*W. F. Evans* and *R. A. Kleinschmidt,* for appellant.

WILLIAMS, J. On March 21, 1911, the appellant filed its petition for rehearing. No response to said petition has been made by the Attorney General for the state, or anyone for the other appellees.

Without passing upon its merits, as a serious question is raised as to the sufficiency of the evidence to sustain the commission's finding, it is ordered that this cause be remanded to the commission, with instructions to take additional evidence as to the construction of the depot in question out of brick or cement rather than wood.

In its findings of fact, the commission recites:

"The railroad company provides in its way-bills that if goods are left in the depot beyond a certain number of hours, that the owners of the goods become liable in case they are destroyed by fire, and this is one of the reasons urged why the building should be of noncombustible materials."

No evidence is contained in the record on this point, and it is directed that the commission receive evidence thereon and certify it up.·

The commission, in its findings, further recites:

"It further appears that it is the policy of the railroad com-

pany in other towns to build depots much more expensive than the one proposed at Tahlequah, that at Hugo a depot was built costing approximately $25,000, or possibly more."

No evidence appears in the record to support such finding. It is directed that the commission receive evidence as to the character of the depot built at Hugo and the amount of freight and passenger receipts received at said station, the size of the town, the population thereof, and of the adjacent country, etc.

It is further directed that the commission receive evidence as to other lines in the state having constructed brick or cement depots in towns or cities of the size of Tahlequah, or less, the receipts of such station, reasonable expectancy of such town or city, etc.

In the record there is no showing made as to the population of the nearby towns, and as to the population of the surrounding country, and as to its prospective development. These are matters that the commission is directed to receive evidence on and to certify up, all of which is directed to be done within thirty days.

All the Justices concur.

ON REHEARING.

Opinion Filed November 14, 1911.

RAILROADS—Construction of Depots—Powers of Corporation Commission—Specification of Material. It is within the sound discretion of the Corporation Commission to prescribe in advance of the undertaking the material to be used in a depot building ordered constructed on the line of road of the appellant, pursuant to sec. 26, art. 9, of the Constitution.

(Syllabus by the Court.)

On rehearing.   Order of Corporation Commission affirmed.

St. Louis & S. F. R. Co. v. Sutton et al.

*W. F. Evans, Fred H. Wood,* and *R. A. Kleinschmidt,* for appellant.

*Chas. West,* Atty. Gen., and *Chas. L. Moore,* Asst. Atty. Gen., for appellees.

TURNER, C. J.   In its brief submitting this cause to this court, appellant stated the issues thus:

"Therefore, the single issue presented in this case is whether, instead of the depot proposed, it should be, and can be, required to construct one of .the same size, arrangement and convenience, but of material such as brick, stone, or cement, instead of frame."

This issue was brought about by appellant' tendering, on the hearing before the commission, plans and specifications of a proposed frame depot at Tahlequah, alike in every respect to the depot subsequently ordered built by the commission of "brick, stone, or cement."   In support of the issue as thus defined, appellant assailed the order of the commission as being unreasonable in requiring it to build of the material stated; but this court in the opinion sustained the order and, in effect, held that appellant had not fairly overcome the presumption that the same was *prima facie* just, reasonable, and correct.   In other words, the commission, by rejecting the frame structure so tendered and ordering the same to be constructed of brick, etc., in effect held, *inter alia,* that a frame depot was not as adequate, in point of affording comfort and accommodation to the traveling public, as one constructed of brick, stone, or cement.   In this the court in its opinion sustained the action of the commission, and we adhere to that opinion.   On this rehearing, however, for the first time it is contended that, in ordering the structure built of said material, the commission exceeded its jurisdiction.   This sends us to its grant of power.   Sec. 26 of art. 9 of the Constitution provides:

"It shall be the duty of each and every railway company, subject to the provisions herein, to provide and maintain adequate, comfortable, and clean depots, and depot buildings, at its several stations, for the accommodation of passengers, and said depot buildings shall be kept well lighted and warmed for the comfort and accommodation of the traveling public; and all such

roads shall keep and maintain adequate and suitable freight depots and buildings for the receiving, handling, storing, and delivering of all freight handled by such roads."

The contention, in short, on the part of the commission, is that a depot at that point would be adequate, in point of comfort and accommodation, built of a certain material only, and, on the the part of appellant, that one built of another kind would be adequate; and it is for us to determine which one of these contending forces has, under said grant of power, the first right to exercise its discretion and determine this question of adequacy. It is of the utmost importance to know whether the commission has the right only to order in a depot at a certain point, and then leave it to the discretion or option of the appellant to build it of adobe, log, frame, brick, or whatever material it may choose, or whether the commission, in the first instance, as here, has the option to exercise its discretion and prescribe the material which will meet its idea of adequacy and comfort under all the facts disclosed in the record.

. That said section of the Constitution vests this power in the commission we think is clear. In *R. R. Com'rs. v. P. & O. Central R. R. Co.,* 63 Mo. 269, 18 Am. Rep, 208, one Parsons and other citizens of Hartford applied to the Railroad Commissioners of that state, in a manner pursuant to law, representing that the public convenience and necessity required the establishment of a depot at Hartford Center upon the line of the defendant's road. After hearing, the commissioners determined that the prayer of their petition should be granted, and ordered the construction of a building particularly described by them, in a place designated by them, to be erected within a certain time. The company refusing compliance with the order, said commissioners, in their official capacity, in behalf of the state, presented their petition to the Supreme Court, setting forth the facts and praying appropriate action. Later, defendants appeared and pleaded the unconstitutionality of the act under which the proceedings were had, and an infringement of its charter; also, that the opinion of said commissioners was against the weight of the

evidence, and that public convenience and necessity did not require the erection of the depot at the designated spot. The charter of the defendant company, among other things, provided.

"Said corporation * * * shall be bound at all times to have said railroad in good repair, and a sufficient number of suitable engines, carriages, and vehicles for the transportation of persons and articles, and be obliged to receive, at all proper times and places, and convey the same when the appropriate tolls therefor shall be paid and tendered * * * that the Legislature shall, at all times, have the right to inquire into the doings of the corporation, and into the manner in which the privileges and franchises herein and hereby granted may have been used and employed by said corporation, and to correct and prevent all abuses of the same * * * but not to impose any other or further duties, liabilities or obligations; and this charter shall not be revoked, annulled, altered, limited or restrained, without the consent of the corporation, except by due process of law."

After quoting the above, the court said:

"By sec. 6, the president and directors, under direction of the stockholders, have authority to exercise all the powers granted to the corporation for locating, building, completing, and running the road, and all such power as may be necessary and proper to carry into effect the objects of the grant."

The duty of the defendant, in respect to the subject-matter under consideration, was prescribed by that part of the charter which required it "to receive at all proper times and places, and convey persons and articles." The precise contention of the corporation was that the power to determine what were "proper" times and places, for the purposes stated, was discretionary with it, and that its decision was conclusive and final. On the part of the state, it was claimed that the duty thus enjoined was imperative and absolute, and that the state had the power, through its proper tribunals, to say whether it had been performed, and to enforce a performance if there had been none or only a partial one. In determining the question thus presented, the court said:

"By the same section that contains the provisions in question, the corporation is required "to have its railroad in good repair

and a sufficient number of suitable engines, carriages, and vehicles for the transportation of persons and articles.'

·"The language of the charter is not, that it shall be optional with the corporation what number and kind of engines, carriages, and vehicles to furnish, at what times and places to receive and convey persons and freight, and what state of repair to keep the road in; or that it shall put in such rolling stock as it may deem 'suitable and sufficient,' build such depots as it may think proper, and keep the road in such repair as it may pronounce 'good'; but the meaning of the language is that the several things required to be done shall respectively be 'suitable and sufficient', 'proper' and 'good';—in other words, that they shall in fact reasonably be of the description specified. The qualifying words do not change the rights of the parties under the charter. The duty of the corporation and the rights of the public in these respects would have been the same as they now are, if the charter had simply required the corporation to keep its road in repair, furnish it with rolling stock and receive and convey passengers and freight along the line of its road. Under such provisions of the charter, it would be the duty of the corporation to keep the road reasonably safe, provide such rolling stock, establish such depots, and operate the road in such a manner as would afford the public reasonable safety and dispatch in the transaction of business upon the road. The duties enjoined upon the corporation are ministerial duties, to do and perform what the public convenience and necessity reasonably required, in respect to the particulars specified. Nor is it within the discretion of the directors to determine ultimately what these public ministerial duties are, or the manner in which they are to be performed; to hold so would be to concede to the directors the power to promote the private interests of the corporation, by subverting the public objects to be subserved by the charter; the power both of determination and enforcement are necessarily vested in state authority.

"It has been repeatedly held that the general duty of municipal corporations 'to keep their highways in repair' is ministerial, and that a writ of *mandamus* lies to compel its performance, because it is a ministerial, in contradistinction from a discretionary duty. *A fortiori,* the duties enjoined under the eighth section of the charter of the defendant corporation are ministerial, since to their public character is superadded the obligation of performance, resting in contract. Indeed, our whole system of

legislative supervision, through the railroad commissioners, acting as a state police over railroads, is founded upon the theory that the public duties devolved upon railroad corporations by their charter are ministerial, and therefore liable to be thus enforced. Dillon on Mun. Corp. 293; *Uniontown v. Commonwealth*, 34 Pa. 293; *Hannah v. Covington*, 3 Metc. (Ky.) 494."

—And overruled the exceptions to the order, and in the syllabus said:

"It is not within the discretion of the directors of a railroad company ultimately and conclusively to determine the manner in which the corporation shall discharge the public duties enjoined upon it by its charter; that power and duty are devolved upon the state tribunals."

If the commission in that case, pursuant to the comparatively slender grant of power authorizing it to enforce the provisions of the charter requiring the defendant "to receive at all proper times and places and convey persons and articles," had the right to lay down plans and specifications for a depot (which, of course, prescribe the structural material) and order it built according thereto and on a precise spot designated by the commission in its order, which it did, and in so doing was sustained by the Supreme court of that state—we see no reason why the commission in this instance under the liberal grant of power, *supra,* cannot do the same thing and also prescribe the structural material, to the end that, being charged with the duty of seeing that appellant shall provide and maintain a depot adequate for the comfort and accommodation of passengers, it may determine the question of adequacy in point of comfort and accommodation of the traveling public in advance of the undertaking.

This is not in conflict with what we held in *St. L., I. M. & S. Ry. Co. v. State,* 28 Okla. 372, 111 Pac. 396. Here, is a question of jurisdiction. There, none was raised. Here, we have held it to be within the jurisdiction of the commission to determine in advance what would be the proper material with which to erect a depot adequate in point of comfort and accommodation to meet the reasonable requirements of the traveling

public, and that it is not within the option of the appellant so to determine. There, only the reasonableness of the order was involved, and it was held, under all the facts and circumstances, that the company had offered to comply with all that could be reasonably exacted of it, and that the order of the commission, requiring it to remove an old structure and submit plans and specifications for a new and rejecting the tender of a proposed depot ample in every respect, was unreasonable.

As to the reasonableness of the order under consideration, we might say, in addition to what has been so ably said by Mr. Justice Williams, that a sense of comfort is received much through the sense of sight; that a community feels a sense of comfort and pride in a sightly depot closely akin to that felt by one in a sightly home. For that reason, the community, when interested, has the right, when, as here, the erection of a depot is contemplated, to have that sense of comfort in a measure gratified, bearing in mind that what in this respect would be adequate for one man or one community would not be so for another man or another community with higher tastes and aspirations. That the grant of power to the commission was limited to the bare necessities of the case, and did not contemplate that this comfort, as well as mere physical comfort, should be taken into consideration by the commission in discharging its duty of seeing that the company provide and maintain adequate and comfortable depots, which seems to contemplate one in keeping with and fairly demanded for the accommodation of the traveling public, under all the facts and circumstances in the record, or, as stated in *St. L., I. M. & S. Ry. Co. v. State, supra,* which defines a facility to be such "as might be fairly demanded, regard being had, among other things, to the size of the place, the extent of the demand for transportation, the cost of furnishing the additional accommodation asked for, and to all other facts which would have a bearing upon the question of convenience and cost * * * *"—we are not willing to concede. Rather are we of a contrary opinion, and that the business of appellant having

become fairly remunerative, quoting from *Louisiana & Ark. Ry. Co. v. State*, cited in the main opinion, we repeat:

"When such a point in the business of the road is reached, the right of the general public comes clearly into view and it is not for the railroad, but for the commission, to determine how, in what way, and in what place, this money is to be expended so as to best subserve their interest"

—under the grant of power vested in the commission by section, *supra*, of the Constitution.

Since the evidence alleged in the opinion to have been omitted from the record has since been supplied by a further reference to the commission, and it has thus been further shown that eight or ten towns, scattered over an area of about 30 miles, get freight at Tahlequah; that three or four summer resorts and club houses are near there on the Illinois River, with an average membership of 100 each, who live at Muskogee and towns in adjoining country, which bring large crowds during the summer months; that the receipts of the station, as shown by the annual reports, are:

| | |
|---|---|
| Freight forwarded per month | $1,753.54 |
| Freight received per month | 6,125.25 |
| Passenger tickets per month | 3,181.11 |
| Express receipts per month | 869.17 |
| Express forwarded per month | 191.12 |

—making $1,060.29 express business per month, and that the railroad received 55 per cent. of the above amount, or a little over $500 per month from this source, and that the bill of lading, spoken of in the main opinion provides that:

"The carrier or party in possession of the property specified in the bill of lading shall not be responsible for damages or delay caused by the act of God, public enemy, the authority of the law, * * * nor for loss, damage or delay caused by fire occurring after forty-eight hours, exclusive of legal holidays, after notice of the arrival of the property at destination * * * the carrier's liability shall be that of a warehouseman only * * *"

—we are of opinion that the commission had not only the juris-

diction to make the order complained of, but that the same is still *prima facie* just, reasonable, and correct.

HAYES, KANE, and WILLIAMS, JJ., concur; DUNN, J., concurs, but not without grave doubt, which is resolved in favor of the power sought to be exercised.