## ST. LOUIS-S. F. RY. CO. v. STATE et al.

No. 16679—Opinion Filed May 25, 1926.

**Railroads—Regulation by Corporation Commission—Unauthorized Order to Renew Lease on Part of Right of Way to Private Concern.**

An order of the Corporation Commission requiring a railway company to renew lease to a private industry to a portion of its right of way without its consent is unauthorized and void, and constitutes a taking of private property of the railway company for a private use in violation of the Constitution of this state.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from Corporation Commission.

Action by the State and Williams-Miller Mercantile Company against the St. Louis-San Francisco Railway Company. Judgment for plaintiffs, and the railway company appeals. Reversed.

E. T. Miller. Stuart, Sharp & Cruce, and W. T. Stratton, for plaintiff in error.

E. S. Ratliff and Williams & Martin, for defendants in error.

Opinion by PINKHAM, C. The Williams-Miller Mercantile Company filed its com-

plaint before the Corporation Commission, in which it alleged in substance that it had been engaged in general merchandise at Christie, Okla., for a number of years. and in connection therewith have bought and sold lumber, crossties, and cordwood; that it has been paying for a lease for some four or five years on a part of the Frisco Railway Company's right of way of $12 a year for a space of 100 feet long and 80 feet deep; that its lease will expire August 27, 1924, and that it has been notified by the railway company to vacate at once; that it has a number of crossties stacked on the right of way; that the railway company will only allow their contractors to pile timber or ties on this right of way; that this will force complainant to compete with the contractors at an additional cost, as complainant will have to stack some of its timber elsewhere and haul the same to the railway tracks; that if it is forced to give up the lease and pile its ties and haul the same to the railway company's tracks it will be forced to quit the tie business; that a great part of the farmers depend on making crossties for their living after their crops are laid by, and they need competition in the tie business.

The railway company, in its answer, states that the question involved is the right of the defendant company to terminate a contract of lease covering a portion of its right of way entered into with a private industry organized for gain, and not engaged in a public enterprise; that the subject-matter involved does not relate to the furnishing of facilities, or the performance by the defendant of any duty owing to the public at large in its capacity as a common carrier; that any attempt to require it to renew said lease would impair the obligation of such contract in violation of section 10 of art. 2 of the Constitution of the United States as well as section 15 of art. 2 of the Constitution of the state of Oklahoma; that to force and require by order that the defendant, against its will, lease its premises to the complainant, would be a taking of the property of the defendant for a private use without due process of law.

For further answer and separate defense, defendant alleges that the property of the defendant heretofore leased to the complainant is needed by the defendant for use in its capacity as a common carrier, and that the business offered by the complainant is insufficient to justify the defendant being compelled to lease said premises to the complainant.

At the close of the evidence upon the hearing, it was the order of the commission that the defendant, St. Louis-San Francisco Railway Company, renew lease with the complainant. Williams-Miller Mercantile Company at Christie, the lease to be in full force and effect as long as the station grounds in Christie are used for storing wood, ties, and timber, or modified by the Commission. From this order the railway company has appealed to this court.

All of the assignments of error are presented under one proposition, as stated in the railway company's brief as follows:

"Has the Corporation Commission jurisdiction, under the state of facts shown by this record. to order the railway company to make a contract of lease of a portion of its private property to a private individual, for a use not connected with the benefit of the public in general; and was there any evidence offered on behalf of the complainant sufficient to justify the Commission in undertaking to order the company to make such a lease?"

It is disclosed by the evidence adduced upon the hearing. that the complainant, for some 12 years, has, as a part of its business, been a buyer of ties and timber and for several years without objection. it, and others engaged in like business, were permitted to store their ties, cordwood, and other timber, as purchased on the right of way of the railway company adjacent to the side track preparatory to shipment free of charge and without contract or lease. Some four or five years prior to the hearing, these private tie and timber buyers were required to enter into leases under which they paid a small rental annually for the privilege of placing their ties and cordwood upon the railroad company's right of way. the complainant herein paying $12 per annum for such privilege.

It further appears that the railway company, on account of the increasing scarcity of ties and the difficulty of securing them for railroad purposes, concluded that certain yards were required and should be used by the company as assembling yards for its own ties, and acting upon this policy the railway company canceled all the leases it had executed to private tie companies, but that it has executed to two companies, the Hobart-Lee Tie Company and the Hussey-Hobb Company, a lease upon a portion of its right of way solely for the reason that these companies are the agencies of the railway company in securing ties for it. It appears that these companies secure and furnish to the railway company under contract all the ties it requires at a fixed price.

The evidence further discloses that the space needed by the railroad company for the storage of its own ties did not quite take up the full length of the switch track at this point, and that some 100 feet or 150 feet of space being left at one end, this space was offered to any private tie company who cared to lease the same.

It is the theory of complainant that the railway company is endeavoring to discriminate against it as a private tie company, and force it out of business by giving to other tie concerns the privilege of storing ties upon a part of its right of way, while at the same time refusing to give such privilege to the complainant company.

The complainant, Mr. Miller, testified, in substance and effect, that it was the practice of the complainant company to accumulate ties on the right of way, and when it had a sufficient quantity it would sell them to other concerns and they would ship them; that so far as the right of way is concerned, it was a place to store its ties until they could be sold. This witness also stated that the complainant company has not shipped ties in any manner for more than 12 months, and that for some four or five years it has not shipped any ties in its own name, but has simply bought ties and then sold them to another tie concern, the Arkansas Tie & Timber Company.

It clearly appears from this evidence that the complainant does not desire to ship out ties itself, but in case it further engages in the tie business, that it may hold the ties on the railroad's right of way until it can secure from some other tie concern an offer of purchase.

The question as to the shipment of complainant's ties, or as to the furnishing or loading facilities, is not involved in this case. The important question for determination is whether there exists any authority to compel the railway company to renew a lease to a portion of the right of way for an indefinite length of time, and for presumably $12 per year for the use and benefit of a private industry.

It is the theory of the complainant that under the provisions of section 26, art. 9, and section 18, art. 9, of the state Constitution, the order of the Commission in this case is authorized by law; that the same is reasonable and just and should be sustained.

Section 26, art. 9, of the Constitution provides:

"It shall be the duty of each and every railway company, subject to the provisions herein to * * * keep and maintain adequate and suitable freight depots and buildings for the receiving, handling, storing, and delivering of all freight handled by such roads."

Section 18, art. 9, of the Constitution provides:

"The Commission shall have the power and authority and be charged with the duty of supervising, regulating, and controlling all transportation and transmission companies doing business in this state, in all matters relating to the performance of their public duties and their charges therefor, and of correcting abuses and preventing unjust discriminations and extortion by such companies. * * *"

These provisions of the Constitution have been considered by this court in a number of cases, and the rule to be deduced therefrom is that while it is the duty of the railroads to keep and maintain adequate and suitable frieght depots, etc., for the receiving and handling, storing and delivering, of goods, this duty is one owing the general public, and not to any one private citizen or private industry. Chicago, R. I. & P. Ry. Co. v. State et al., 23 Okla. 94, 99 Pac. 901; St. Louis & S. F. R. Co. v. Haywood et al., 25 Okla. 417, 106 Pac. 862; Chicago, R. I. & P. R. Co. v. State et al., 83 Okla. 161, 201 Pac. 260.

The above cases deal with the construction of side tracks, but the gist of those decisions is that the sections of the Constitution relied upon by the Commission, requiring the furnishing of facilities for the use of the public such as depots, station agents, terminal facilities, etc., do not apply to a purely private business for the benefit of one firm or individual.

In Chicago, R. I. & P. Ry. Co. v. State et al., 23 Okla. 94, 99 Pac. 901, Justice Kane, after reviewing the Constitution and authorities, holds that the complainants in that case were not entitled to the relief sought, because it would be extending the power of the state to require facilities for the convenience of the public to bring within its scope private persons or corporations operating a business for private gain only. The case further held that the police power of the state could not be invoked for such a purpose as the track or facility demanded was not in any sense a public track, and therefore all those sections of the Constitution such as section 18 and section 26 of art. 9, providing that equal facilities shall be furnished the public, had no application to the facts involved in that case.

It is said in the concluding portion of the opinion referred to:

"The industries the complainants are engaged in are not public enterprises under the laws of Oklahoma; they are purely private in their nature. In that respect the case at bar fails fully within the rule laid down in the Nebraska case, so far as the right of the complainants to the use of the right of way of the railway company is concerned."

An examination of the Nebraska case cited by Justice Kane in his opinion, from the Supreme Court of the United States (Missouri-Pac. Ry. Co. v. Nebraska, 164 U. S. 403, 41 L. Ed. 489), discloses that practically the same contention advanced by the complainants in the instant case was specifically passed upon by the Supreme Court of the United States. That court held:

"That the order in question, so far as it required the railroad corporation to surrender a part of its land to the petitioners, for the purpose of building and maintaining their elevator upon it, was, in essence and effect, a taking of private property of the railroad corporation, for the private use of the petitioners. The taking by a state of the private property of one person or corporation, without the owner's consent, for the private use of another, is not due process of law, and is a violation of the Fourteenth Article of Amendment of the Constitution of the United States."

In the brief of counsel for the complainant, the cases of St. Louis & S. F. Ry. Co. v. Sutton, 29 Okla. 553, 119 Pac. 423, and Chicago, R. I. & P. Ry. Co. v. State, 67 Okla. 10, 168 Pac. 239, are cited, in support of the proposition that the order of the Commission is reasonable and just. We observe nothing in the cases cited in conflict with the proposition that, where a duty to the public is not involved, the police power of the state exercised by the Commission does not exist.

The finding of the Commission, that the railroad company's action in canceling the lease in question would result in a monopoly or discrimination against the complainant, which the Commission would have the authority to prohibit under section 18 of art. 9 of the Constitution, is clearly, we think, without support in the evidence.

The railway company, except in so far as its duty to the public is concerned, has a perfect right to use its own property for its own purposes. The undisputed evidence is that it needs all of its right of way at the place involved, except about 150 feet for the purpose of storing the ties bought by its own purchasing agent.

The effect of the order would be that the Commission has made a contract for the railway company against its will, appropriating to the use of a private person its property or an estate therein.

We conclude that the principle announced in the case of Chicago, R. I. & P. Ry. Co. v. State et al., 23 Okla. 94, 99 Pac. 901, is applicable to the facts of the instant case, and that the order of the Commission complained of should be reversed, with directions to the Corporation Commission to dismiss the complaint in this proceeding.

By the Court: It is so ordered.