BOHN LUMBER PRODUCTS CO. v. MICHIGAN
PUBLIC SERVICE COMMISSION.

1. CARRIERS—STATUTES—REGULATION OF LEASES—RATE DISCRIMI-
NATION.

The primary purpose of act regulating charges of common car-
riers for leases of railroad property or property under con-
trol of railroad companies to be used for sites for elevators
and other buildings used for receiving, storing or manufactur-
ing any article of commerce to be transported by common
carriers is to prevent rate discriminations being accomplished
indirectly through the medium of leases of railroad property
(2 Comp. Laws 1929, § 11377 et seq.).

2. SAME—RAILROADS—PUBLIC WELFARE.

A railroad's business as a common carrier is, or at least may
constitute, a monopoly with which public welfare is peculiarly
concerned.

3. CONSTITUTIONAL LAW—DUE PROCESS—REGULATION OF CARRIER'S
LEASES.

In the absence of involvement of charges for services as common
carrier, a statute empowering public service commission to
regulate charges of common carriers for leases of nonpublic
service property owned by railroad does not authorize the com-
mission to compel a railroad, against its will, to renew and
continue such leases on just and reasonable terms as long as
lessees desire to occupy premises during railroad's ownership
unless the railroad company desires to use property in its busi-
ness, since to do so would deprive the railroad of its property
without due process of law (U. S. Const. am. 14, § 1; Mich.
Const. 1908, art. 2, § 16; 2 Comp. Laws 1929, § 11377 et seq.).

4. SAME—DUE PROCESS.

The taking by a State of the private property of one person or
corporation, without the owner's consent, for the private use
of another, is not due process of law (U. S. Const. am. 14,
§ 1; Mich. Const. 1908, art. 2, § 16).

5. Railroads—Constitutional Law—Due Process.

While a railroad company is subject to proper governmental regulation as such in the public interest, it is still not outside the protection of the State and Federal Constitutions in respect to the appropriation of its property for the use of another party for a private purpose (U. S. Const. am. 14, § 1; Mich. Const. 1908, art. 2, § 16).

6. Constitutional Law—Right to Regulate.

The right to "regulate" does not include the right to "take" for the private use of another (U. S. Const. am. 14, § 1; Mich. Const. 1908, art. 2, § 16).

7. Carriers—Leases of Nonpublic Service Property—Regulation.

Except in cases wherein charges by a common carrier for its service to the public are involved, neither courts nor public regulatory bodies have the power to make leases of nonpublic service property owned by common carriers (U. S. Const. am. 14, § 1; Mich. Const. 1908, art. 2, § 16; 2 Comp. Laws 1929, § 11377 *et seq.*).

8. Railroad—Carriers.

A railway company, except insofar as its duty to the public is concerned, has a perfect right to use its own property for its own purposes.

9. Statutes—Construction as Constitutional.

Where possible so to do, courts should construe statutes in such a manner as to render them constitutional rather than unconstitutional.

10. Carriers—Statutes—Leases of Nonpublic Service Property —Rate Discrimination.

Statute empowering public service commission to regulate charges of common carriers for leases of railroad nonpublic service property would be applicable to a leasehold contract which indirectly resulted in discrimination incident to the railroad's service as a common carrier (2 Comp. Laws 1929, § 11377 *et seq.*).

11. Certiorari—Law Writ.

Writs of certiorari issue only from the law side of the court.

Appeal from Ingham; McDonald (Archie D.), J., presiding. Submitted October 9, 1946. (Docket No. 39, Calendar No. 43,490.) Decided April 8, 1947.

Bill by Bohn Lumber Products Company, a co-partnership consisting of Frank G. Brandt, Louis H. Blohm, Warren L. Moore and Harold G. Mounteer, against Michigan Public Service Commission to set aside an order of defendant. Bill dismissed. Plaintiff appeals. Affirmed.

*Griffin, Emery & Seely* (*Robert C. Boyer,* of counsel), for plaintiff.

*Foss O. Eldred,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *James W. Williams,* Assistant Attorney General, for defendant.

*Amici curiae:*
Chrysler Corporation by *Dickinson, Wright, Davis, McKean & Cudlip.*
New York Central Railroad Company, by *Henry P. Stacy* and *Russell T. Walker* (*John J. Danhof,* of counsel).

North, J. The plaintiff, Bohn Lumber Products Company, is engaged in the general woodworking business and occupies a property containing a little less than 65,000 square feet of land so located that it is served by the New York Central Railroad's belt line in Detroit. The property is owned by the Michigan Central Railroad Company and is included in the general lease of that company's property to the New York Central Railroad Company, which company in turn entered into a lease of the occupied property with the plaintiff's predecessor on March 15, 1935. This lease was for the term of one year from March 1, 1933, but continuing indefinitely thereafter until terminated by either party by a 90-day written notice. Other provisions of this lease need not be recited. Apparently plaintiff or its

predecessor had occupied the premises in question for some years prior to 1933. On July 20, 1945, the New York Central Railroad Company advised plaintiff by letter that it had leased these premises (with additional property) to the Chrysler Corporation and had assigned to that corporation the railroad company's lease with the plaintiff, effective June 1, 1945. On August 21, 1945, the Chrysler Corporation gave plaintiff written notice that it intended to terminate the lease as of November 19, 1945, and thus secure possession of the premises occupied by the plaintiff. Plaintiff has not started any civil action on the ground that the termination was not in accord with the terms of its lease. Instead, plaintiff filed a complaint with the Michigan public service commission, alleging that the assignment of the lease to the Chrysler Corporation and steps taken by the Chrysler Corporation to terminate the lease were done with the purpose of evading Act No. 303, Pub. Acts 1921 (2 Comp. Laws 1929, § 11377 *et seq.,* Stat. Ann. § 22.661 *et seq.*) and to discriminate between customers of the railroad. The complaint named the New York Central Railroad Company and Chrysler Corporation as parties defendant. Defendants each filed an answer to this complaint, also a motion to dismiss. On February 12, 1946, after taking testimony and hearing counsel, the commission entered an order granting the motions to dismiss on the ground that the evidence offered failed to establish any cause for complaint.

On March 4, 1946, plaintiff filed in the Supreme Court a petition for allowance of an order to show cause why a writ of mandamus should not issue against the commission. The petition was denied on April 4, 1946. On March 14, 1946, plaintiff also filed a bill of complaint in the circuit court for Ingham county, against the Michigan public service

commission as defendant seeking as relief that the order of the commission dated February 12, 1946, be set aside, that terms and conditions be fixed whereby plaintiff might continue in possession of the premises; or in the alternative that if the court found it did not have jurisdiction under appellate procedure of Act No. 419, Pub. Acts 1919,* that the circuit court issue a writ of certiorari directed to the commission for review of the commission's dismissal of the complaint. Defendant moved to dismiss the bill of complaint. The motion was argued, and was granted by the trial court. From the decree dismissing the bill of complaint plaintiff has appealed.

Determination of this controversy rests solely on the basic question as to whether or not the Michigan public service commission has jurisdiction, under the given facts, to grant relief sought by plaintiff. An answer in the negative precludes the necessity of considering the other grounds for appeal urged by plaintiff.

While the actual fact is that the owner of the lessor's interest in the lease is now the Chrysler Corporation by its assignment from the New York Central Railroad Company, and thus it might be argued that the controversy is only between the plaintiff and the Chrysler Corporation, yet our consideration of the case will be as though the lease were still between plaintiff and the railroad, and the railroad were seeking to terminate the lease.

The title and pertinent portions of Act No. 303, Pub. Acts 1921, read as follows:

"An act to regulate charges of common carriers for leases of railroad property or property under

---

* See 2 Comp. Laws 1929, § 11006 *et seq.*, as last amended by Act No. 35, Pub. Acts 1943 (Comp. Laws Supp. 1940, 1945, § 11008 *et seq.*, Stat. Ann. and Stat. Ann. 1946 Cum. Supp. § 22.1 *et seq.*).—REPORTER.

control of railroad companies to be used for sites for elevators, warehouses, ice houses, buying stations, flour mills, coal sheds or other buildings used for receiving, storing or manufacturing any article of commerce to be transported over the rails of common carriers.''

"Section 1. The charge of any common carrier for (such) leasehold rights * * * shall be just, reasonable and nondiscriminatory.

"Sec. 2. Whenever any common carrier and any person, firm or corporation engaged in the business (specified in the title) * * * cannot agree upon the terms and conditions whereby the person may continue in the operation of the business aforesaid, either party may apply by complaint in writing to the Michigan public utilities commission (now Michigan public service commission) for a decision as to the proper terms and conditions for the continuance of the business above mentioned, operated by the person. * * *

"Sec. 3. The Michigan public utilities commission (after notice and hearing as herein provided) * * * is hereby given authority to determine and fix by its order the terms and conditions for the continuance of the business of the person operating an elevator, * * * or other building used for receiving, storing or manufacturing any article of commerce to be transported or which has been transported over the rails of common carriers.''

Doubtless the primary purpose of the above act is to prevent rate discriminations being accomplished indirectly by common carriers through the medium of leases of railroad property. The fundamental purpose of all regulatory legislation of this character is to prevent discriminatory rates. Through the course of years it has become recognized that a railroad's business as a common carrier is, or at least

may constitute, a monopoly with which public welfare is peculiarly concerned. In consequence there has been built up a vast body of law aimed at the regulation of railroads as common carriers.

In the instant case the commission, after full hearing, dismissed plaintiff's complaint on the ground that "the commission is of the opinion that the complaint as filed fails to allege, and the evidence presented fails to establish, any cause or grounds of complaint, and that the motions to dismiss should be granted." The circuit judge dismissed plaintiff's bill of complaint because, among other reasons for dismissal, he "found and determined that said bill of complaint filed in the above entitled cause does not state a cause of action and that the complaint filed with the Michigan public service commission fails to allege any cause or ground for complaint." Each of the above determinations was based upon a construction of the statute; and likewise determination of this appeal turns upon whether plaintiff's bill of complaint states a cause of action in the light of proper construction of the above quoted statute.

Plaintiff makes no claim that the Chrysler Corporation has obtained a preferential rate through its lease from the railroad at a rental less than is just and reasonable. Instead plaintiff's position, as set forth in the bill of complaint, is in substance that because it formerly had a lease of the property and still has possession, sections 2 and 3 of Act No. 303, Pub. Acts 1921 should be so construed as to empower the Michigan public service commission to compel against the railroad's will renewal and continuation of the lease on just and reasonable terms as long as plaintiff desires to occupy the premises, at least while the railroad's ownership continues unless the railroad desires to use the property in its business; and that failure so to enforce plaintiff's alleged

rights results in unlawful discrimination. To so construe the statute would be to hold that the commission is vested with power to compel the railroad company, against its will, to convey an interest in its nonpublic service property. This, we think, would render the statute violative of article 2, § 16, of the Michigan Constitution, in that it would deprive the railroad of its property without due process of law. And, such a holding would also render the statute in violation of section 1, of the fourteenth article of amendment to the Federal Constitution.

"This court * * * is unanimously of opinion, that the order (of the State board of transportation) in question, so far as it required the railroad corporation to surrender a part of its land to the petitioners, for the purpose of building and maintaining their elevator upon it, was, in essence and effect, a taking of private property of the railroad corporation, for the private use of the petitioners. The taking by a State of the private property of one person or corporation, without the owner's consent, for the private use of another, is not due process of law, and is a violation of the fourteenth article of amendment of the Constitution of the United States. (Citing numerous authorities.)" *Missouri Pacific Railway Co.* v. *Nebraska,* 164 U. S. 403 (17 Sup. Ct. 130, 41 L. Ed. 489).

The supreme court of Iowa has passed squarely upon the question involved in the instant case; and its decision is peculiarly applicable because it involved consideration of a statute almost identical with Act No. 303, Pub. Acts 1921, and further the decision was in the light of constitutional provisions strikingly similar to corresponding provisions in the Michigan Constitution. Plaintiff in the Iowa case had possessed a lease of railroad property on which a coal shed was located and used by plaintiff in his

private business of receiving shipments of coal and retailing it to his customers. He and the railroad were unable to agree upon the rental plaintiff should be required to pay for future occupancy of the property. He thereupon applied, as was provided by the Iowa statute, to the board of railroad commissioners to fix the rental; and after hearing, the board made an order fixing the rental to be paid for future occupancy. On appeal the Iowa supreme court held that, as sought to be enforced by the plaintiff, the statute would be unconstitutional. In part the court said:

"If the effect of the order of the board of railroad commissioners, in the instant case, is to deprive the appellant of private property for other than a public use, then such order is violative of the appellant's constitutional rights.    *    *    *

"So the fact that appellant is a railroad company and subject to proper governmental regulation as such, in the public interest, does not place it outside the protection of the Constitutions both State and Federal, in respect to the appropriation or 'taking' of its property for the use of another party for a private purpose. The right to 'regulate' does not include the right to 'take' for the private use of another. In its last analysis, therefore, the question for our determination is whether or not the use to which the appellee sought to subject the property of the appellant was, in a proper sense, a 'public use,' as distinguished from a 'private use.'    *    *    *

"We hold that the order of the board of railroad commissioners requiring that the appellant should furnish to the appellee a site for the erection and maintenance of a coal shed for the sole purpose of storing his own coal therein to be sold by the appellee for private gain and fixing the rental therefor was a violation of the constitutional rights of the appellant, and, if carried out, would result in taking the private property of the appellant for other than a public use. It therefore follows that the order ap-

pealed from was an invasion of appellant's constitutional rights, and hence invalid." *Ferguson* v. *Railroad Co.*, 202 Iowa, 508 (210 N. W. 604, 54 A. L. R. 1).

Clearly the railroad company, if it were the owner instead of a lessee, would have the right to sell the property occupied by plaintiff. *Attorney General* v. *Railway Co.*, 263 Mich. 431 (94 A. L. R. 520). This is conceded in plaintiff's brief. But there is no apparent reason why it should be held that the railroad may not convey a lesser estate, *i.e.*, a leasehold interest for years in its property which is not devoted to the railroad's service as a common carrier. That is exactly what the railroad has done in the instant case.

In general it may be said, except in cases wherein charges by a common carrier for its service to the public are involved neither courts nor public regulatory bodies have, under the Constitution, the power to make contracts of this character which are binding upon a common carrier.

"Where a duty to the public is not involved, the police power of the State exercised by the commission does not exist. * * * The railway company, except in so far as its duty to the public is concerned, has a perfect right to use its own property for its own purposes." *St. Louis-S. F. R. Co.* v. *State,* 118 Okla. 89 (246 Pac. 876, 47 A. L. R. 106).

Plaintiff's present condition relative to its right to continue in possession of the property is due to the contractual terms of its lease with the railroad company, which expressly provided for termination of the lease by either party on 90 days' written notice. As plaintiff would have Act No. 303 construed it clearly would impair the lessor's right to use or contract concerning its own property in the respect just noted. The statute so construed would be in violation of article 2, § 16 of the Michigan Con-

stitution, which forbids depriving one of his property without due process of law.

It is elementary that where possible so to do, courts should construe statutes in such a manner as to render them constitutional rather than unconstitutional. *Evans Products Co.* v. *State Board of Escheats,* 307 Mich. 506, 533; *Lawrence Baking Co.* v. *Unemployment Compensation Commission,* 308 Mich. 198, 215 (154 A. L. R. 660). The statute here involved may be held valid if applied only in appropriate circumstances. For example, the statute would be applicable to a leasehold contract which indirectly resulted in discrimination incident to the railroad's service as a common carrier. And concerning a like statute, in *Ferguson* v. *Railroad Co., supra,* it is said:

"Under the general and broad terms of the statute (quite identical to the Michigan statute), it is possible that the board of railroad commissioners may properly be called upon to act in connection with a case where a use of railway property by another party may be a proper public use. Such a situation is not presented in the instant case."

Many cases in this field of the law which are in accord with our holding herein might be cited, but we deem it sufficient to note those above cited. While plaintiff attempts on various grounds to distinguish the above cases from the one at bar, nonetheless in our opinion, notwithstanding some variations in the factual background, the cited cases support our conclusion herein. Among the grounds upon which plaintiff urges that the cited cases should be distinguished is that the property there involved was located on the railroad right of way. But there is much reason for holding that regulatory powers should be more readily applied to property which, like the right of way, is a part of the carrier's public service property, than to property owned by

a railroad but not devoted to, or used in, its common carrier service.

Since from the record we find that neither in its complaint filed with the public service commission nor in its bill of complaint filed with the circuit court did plaintiff set forth a cause of action entitling it to the relief sought, it follows that the decree dismissing the bill of complaint must be affirmed. For the same reason, and the further reason that writs of certiorari issue only from the law side of the court, it follows that plaintiff was not entitled to have certiorari issued by the circuit court in chancery to the Michigan public service commission. The decree entered in the trial court is affirmed, with costs to defendant.

Carr, C. J., and Butzel, Bushnell, Sharpe, Boyles and Reid, JJ., concurred. Dethmers, J., did not sit.