*In re* RETAIL WHEELING TARIFFS

*In re* APPROVAL OF EXPERIMENTAL RETAIL WHEELING TARIFFS

Docket Nos. 187387, 187388, 189396, 189397, 189480, 189481, 189503, 189504. Submitted September 4, 1997, at Lansing. Decided January 20, 1998, at 9:10 A.M. Leave to appeal sought.

The Association of Businesses Advocating Tariff Equity (ABATE) sought from the Public Service Commission approval of an experimental tariff for retail wheeling to be imposed on the Consumers Power Company. The PSC on its own motion considered the imposition of a similar tariff on the Detroit Edison Company. The Attorney General and the Dow Chemical Company intervened. Retail wheeling refers to the situation where a local utility uses its transmission facilities to transmit to a customer with which it is connected electricity that has been purchased directly by the customer from a third-party provider. Following a contested case hearing, a hearing referee concluded that although the PSC had the authority to approve rates, terms, and conditions of retail wheeling and the PSC's authority over retail wheeling activities was not preempted by federal law, the PSC lacked the authority to compel a utility to provide retail wheeling service and retail wheeling could go forward only if the customer's local utility voluntarily agreed to provide retail wheeling services. The PSC agreed with the referee that federal law did not preempt its authority to implement an experimental retail wheeling program, but concluded that it had authority under state law to require a utility's participation in a retail wheeling program. The PSC further concluded that third-party providers engaging in sales of power to retail wheeling customers would be required to obtain a certificate of public convenience and necessity and would be required to obtain a franchise from the municipality in which the customer was located. The PSC entered an interim order incorporating those conclusions and approving the terms and conditions of an experimental retail wheeling program for the customers located in the territories served by Consumers and Detroit Edison, but remanded the matter to the hearing referee for the limited purpose of determining rates and charges. In its order after remand, the PSC determined that it should go forward with the experimental retail wheeling tariff established in the interim order,

concluded that the capacity reservation charges should be calculated using an embedded-cost approach, and determined that the various rate determinations were just and reasonable, but determined that a blanket certificate of public convenience and necessity could be sought for the limited period of the experimental retail wheeling tariff. Detroit Edison appealed and the Attorney General cross-appealed, and Dow, Consumers, and ABATE appealed separately. The appeals were consolidated.

The Court of Appeals *held*:

1. The PSC has the statutory authority to authorize an experimental retail wheeling program. The PSC is granted broad authority to control and supervise the business of transmitting and supplying electricity and to order that adequate service be rendered. Because the order authorizing the experimental retail wheeling program did not compel either utility to engage in any specific management practice, the retail wheeling program does not infringe on either utility's right to control its management activities. Although the experimental retail wheeling program will require the utilities to unbundle their power generating services from their power transmission services and will require the utilities to transmit to their customers power that the customers have purchased from third-party suppliers, neither utility will be required to provide service to a customer that it does not currently serve. Accordingly, the order implementing the plan does not dictate the substance of management decisions and, thus, is lawful and reasonable.

2. Neither federal statutory authority nor the implementation of that statutory authority by the Federal Energy Regulatory Commission through its regulatory authority precludes states from implementing state retail wheeling programs. Accordingly, the PSC properly held that it was not precluded by federal preemption from implementing its retail wheeling program.

3. The PSC properly concluded that a third-party provider of electric power that desires to sell power pursuant to the retail wheeling program must obtain both a certificate of public convenience and necessity pursuant to § 2 of 1929 PA 69, MCL 460.502; MSA 22.142 and a franchise from the municipality in which the customer is located. Section 2 of 1929 PA 69 clearly provides that a public utility may not carry on any local business, either directly or indirectly, without obtaining such a certificate. Section 1 of 1929 PA 69, MCL 460.501; MSA 22.141, defines a public utility in a manner that includes within its definition a third-party provider located outside Michigan. Because such a third-party provider is a public utility within the meaning of 1929 PA 69 and because the implementation of any retail wheeling contract requires the use of the transmission

facilities of the local electric utility, the underlying purpose of the certificate of public convenience and necessity—the prevention of uneconomic duplication of services—is applicable to any retail wheeling contract. By the same token, a third-party retail wheeling provider, being a public utility within the meaning of 1929 PA 69, is subject to the requirement of Const 1963, art 7, § 29 requiring that a public utility obtain a franchise from a municipality within which it seeks to transact business.

4. Although the PSC's retail wheeling order requires the utilities to transmit the power that has been purchased from third-party providers, it further provides that the utilities will receive compensation for their transmission of that power. The utilities have not shown any unconstitutional taking of property without just compensation.

5. The utilities' assertion that the retail wheeling program results in a unconstitutional impairment of their contracts relating to the interconnection with other utilities is unsubstantiated and speculative.

6. The PSC's adoption of the embedded-costs method of calculation of capacity reservation charges does not result in rates that are unjust or unreasonable.

Affirmed.

PUBLIC UTILITIES — ELECTRIC UTILITIES — RETAIL WHEELING — FEDERAL PREEMPTION.

The Public Service Commission has statutory authority to adopt a state experimental retail wheeling program; the state is not precluded by federal preemption from adopting a retail wheeling program for regulating such sales in this state.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *J. Peter Lark,* Assistant in Charge, and *Robert L. Mol,* Assistant Attorney General, for the Attorney General.

*Foster, Swift, Collins & Smith, P.C.* (by *Theodore W. Swift, William K. Fahey,* and *Stephen J. Rhodes*), and *Christopher C. Nern, Thomas A. Hughes,* and *Raymond O. Sturdy, Jr.,* for the Detroit Edison Company.

*Clark Hill, P.L.C.* (by *Robert A. W. Strong* and *John M. Ketcham*), for the Association of Businesses Advocating Tariff Equity.

*Don L. Keskey, David A. Voges,* and *Henry J. Boynton,* Assistant Attorneys General, for the Public Service Commission.

*Fraser Trebilcock Davis & Foster, P.C.* (by *David E. S. Marvin* and *Michael S. Ashton*), for the Dow Chemical Company.

*David A. Mikelonis, Jon R. Robinson, H. Richard Chambers,* and *Kelly M. Hall,* for Consumers Power Company.

Amici Curiae:

*Clark Hill, P.L.C.* (by *Robert A. W. Strong* and *John M. Ketcham*), and *Cleary, Gottlieb, Steen & Hamilton* (by *Sara D. Schotland*), for the Electricity Consumers Resource Council, the American Iron and Steel Institute, the Chemical Manufacturers Association, and the American Forest & Paper Association.

Before: M. J. KELLY, P.J., and REILLY and JANSEN, JJ.

PER CURIAM. In these consolidated cases, appellants Detroit Edison Company, Dow Chemical Company, Consumers Power Company, and the Association of Businesses Advocating Tariff Equity (ABATE) claim appeals from an order entered on June 19, 1995, by the Michigan Public Service Commission establishing a framework for an experimental retail wheeling program for Edison and Consumers. The Attorney General has filed a claim of cross-appeal in Edison's appeal. We affirm in all respects.

In 1992, ABATE sought approval of an experimental retail wheeling tariff for Consumers. The term "retail wheeling" refers to a local utility's delivery of power to a customer, also referred to as an end-user, in its service territory. Retail wheeling differs from traditional, full service electric service in that the customer arranges for the purchase of its own power. That power is transmitted to the customer through the local utility's system. The entity that sells the power to the customer is known as a third-party provider.

A contested case hearing was held concerning the application, and on August 27, 1993, the hearing referee issued a proposal for decision. The hearing referee recommended that retail wheeling programs be allowed to go forward only if the customer's local utility voluntarily agreed to provide retail wheeling services. The hearing referee concluded that although the PSC's statutory authority to regulate electric service did not include the power to compel a utility to provide retail wheeling service, the PSC had the authority to approve rates, terms, and conditions of retail wheeling service. In addition, the hearing referee rejected the contention that the PSC's authority over retail wheeling activities had been preempted by federal law.

In an interim order entered on April 11, 1994, the PSC addressed substantive issues and approved certain terms and conditions of an experimental retail wheeling program for customers located in the territories served by Consumers and Edison. The PSC reopened the record and remanded the case to the hearing referee for the limited purpose of determining rates and charges.

The PSC concluded that existing state law allowed it to authorize the utilities' participation in a retail wheeling program. The PSC relied on the electric transmission act, 1909 PA 106, MCL 460.551 *et seq.*; MSA 22.151 *et seq.* (Act 106), the public service commission act, 1939 PA 3, MCL 460.1 *et seq.*; MSA 22.13(1) *et seq.* (Act 3), and the railroad commission act, 1909 PA 300, MCL 462.2 *et seq.*; MSA 22.21 *et seq.* (Act 300), which it found provides comprehensive authority to establish rates, terms, and conditions of retail service. The PSC concluded that approval of an experimental program would not intrude on a utility's authority to manage its operations related to power production and procurement.

The PSC rejected the assertion that its authority to implement an experimental retail wheeling program was preempted by federal law. Noting that the Federal Power Act (FPA), 16 USC 791a *et seq.*, administered by the Federal Energy Regulatory Commission (FERC), established the basis for federal authority over the transmission and wholesale sale of electric power in interstate commerce, the PSC concluded that while § 201(b)(1) of the FPA, 16 USC 824(b)(1), provided for FERC jurisdiction over the transmission and sale of electric energy in interstate commerce and over all facilities for such transmission and sale, it did not give FERC jurisdiction over facilities used for generation of electric power or facilities used in local distribution or only for the transmission of electric energy in intrastate commerce. The PSC concluded that under this framework, the regulation of rates, terms, and conditions of retail electric service provided by a local utility to a customer within its territory was a function of local distribution. Furthermore, the PSC

found that amendments of the FPA, added by the Energy Policy Act of 1992, further clarified the jurisdictional framework. Section 212(g), 16 USC 824k(g), provides that no FERC order could be inconsistent with a state law governing the retail marketing areas of electric service. The PSC found that by enacting § 212(g), Congress intended that states would have the final word on whether a retail wheeling program would be authorized. Section 212(h), 16 USC 824k(h), prohibits the FERC from issuing an order requiring the transmission of electric energy directly to an ultimate consumer. The PSC concluded that under § 212(h), the FERC could not mandate a retail wheeling program.

The PSC concluded that third-party providers engaging in sales of power to retail wheeling customers would be required to obtain a certificate of public convenience and necessity (CPCN) pursuant to 1929 PA 69 (Act 69), MCL 460.501 *et seq.*; MSA 22.141 *et seq.*, before a transaction could occur. The PSC observed that the purpose of Act 69 was to determine that any duplication of services was in the public interest. The PSC rejected the assertion that the definition of "public utility" encompassed only entities with facilities located in Michigan.

The PSC concluded that a third-party provider would be required to obtain a franchise from the municipality in which the customer was located. The PSC based its conclusion on the language of Const 1963, art 7, § 29, which states that a party operating a public utility must obtain a franchise if it seeks to use the highways, streets, alleys, or other public places in the municipality, or if it seeks to transact a local business within the municipality.

In a decision after remand entered on June 19, 1995, the PSC established rates and addressed issues raised on rehearing and during the remand phase. The PSC determined that the experiment should go forward under the framework established in the interim order and concluded that the various rate determinations, viewed individually or as a whole, were just and reasonable. The PSC specifically concluded that capacity reservation charges, which recover the costs of using the local utility's transmission and distribution facilities to provide retail delivery service, were to be calculated using an embedded-cost approach.

The PSC concluded that it did not err in holding that Act 69 and franchise requirements would apply to third-party providers during the retail wheeling experiment. The PSC rejected the assertion made on rehearing by ABATE and Dow that *Nat'l Steel Corp v Public Service Comm*, 204 Mich App 630; 516 NW2d 139 (1994), established that Act 69 did not apply to private, voluntary purchases involving one or only a few buyers. The PSC distinguished *Nat'l Steel Corp*, on the ground that in that case the customer, National Steel, owned the pipeline that was used to transport the gas. The provider was not a public utility. In addition, the PSC also rejected ABATE's attempt to analogize retail wheeling to the natural gas industry. The preexisting structure of the gas industry made unbundling of services easier, whereas competition in the electricity business could lead to wasteful duplication and uneconomic investment. That risk would be addressed under Act 69. Recognizing that complying with Act 69 could pose practical difficulties, especially in the context of a limited experiment, the PSC determined that it would allow each utility to file an

application for a blanket CPCN for its program. A blanket CPCN would confer approval required under Act 69 for all sales by third-party providers to retail wheeling customers.

The standard of review for PSC orders is narrow and well established. Pursuant to MCL 462.25; MSA 22.44, all rates, fares, charges, classification and joint rates, regulations, practices, and services prescribed by the PSC are presumed, prima facie, to be lawful and reasonable. *Michigan Consolidated Gas Co v Public Service Comm*, 389 Mich 624, 635-636; 209 NW2d 210 (1973). A party aggrieved by an order of the PSC bears the burden of proving by clear and convincing evidence that the order is unlawful or unreasonable. MCL 462.26(8); MSA 22.45(8). Courts must defer to the PSC's administrative expertise. *Attorney General v Public Service Comm*, 206 Mich App 290, 294; 520 NW2d 636 (1994).

### THE PSC'S STATUTORY AUTHORITY TO AUTHORIZE RETAIL WHEELING

Edison, Consumers, and, on cross-appeal, the Attorney General, argue that the PSC had no authority to implement a retail wheeling program. They contend that nothing in Act 106, Act 3, or Act 300 authorizes the PSC to implement retail wheeling, and that the PSC has only those powers conferred on it by the Legislature. *Union Carbide Corp v Public Service Comm*, 431 Mich 135, 146; 428 NW2d 322 (1988). They argue that compelling a utility to participate in retail wheeling would relieve that utility of the obligation to supply an existing customer with power from its own resources and that the PSC exceeds its authority by ordering a utility to engage in specific management practices or to enter or not enter into any particular

contract. *Consumers Power Co v Public Service Comm,* 189 Mich App 151, 180; 472 NW2d 77 (1991).

We hold that the PSC has the statutory authority to authorize an experimental retail wheeling program. While the PSC has only those powers conferred on it by the Legislature, *Union Carbide, supra,* the interpretation given to statutes by the agency charged with applying them is entitled to great deference. *In re Quality of Service Standards for Regulated Telecommunication Services,* 204 Mich App 607, 612; 516 NW2d 142 (1994). The PSC did not cite specific sections of Act 106, Act 3, or Act 300 when concluding that those statutes authorize it to implement an experimental retail wheeling program; however, an examination of various provisions of those statutes demonstrates that they support the PSC's decision. Section 2 of Act 106, MCL 460.552; MSA 22.152, gives the PSC "control and supervision of the business of transmitting and supplying electricity . . . ." Supplying electricity must be deemed to include the act of delivering electricity to a customer. Section 6 of Act 106, MCL 460.556; MSA 22.156, allows the PSC to order service to be rendered in any case in which such an order is reasonable. Section 6 of Act 3, MCL 460.6; MSA 22.13(6), authorizes the PSC to regulate services and conditions of service. While this section does not contain a grant of specific powers, it construes the extent of the PSC's jurisdiction and grants the PSC broad authority. *Attorney General v Public Service Comm,* 122 Mich App 777, 786-787; 333 NW2d 131 (1983). Under Act 300, the PSC possesses the same authority over utilities as did the Railroad Commission over railroads. *Union Carbide, supra* at 156. Section 22 of Act 300, MCL 462.22; MSA 22.41,

authorizes the PSC to investigate and order adequate service to be rendered.

The PSC's order authorizing an experimental retail wheeling experiment does not infringe on the right of Edison and Consumers to control their management activities. In *Huron Portland Cement Co v Public Service Comm*, 351 Mich 255, 266; 88 NW2d 492 (1958), our Supreme Court held that § 6 of Act 106 did not authorize the PSC to order Consumers to deliver electric current to a locale through which its lines did not pass. In the instant case, the PSC's order does not require Edison or Consumers to construct new facilities. In *Detroit Edison Co v Public Service Comm*, 221 Mich App 370, 386-389; 562 NW2d 224 (1997), this Court held that the PSC's modification of Edison's proposed demand-side management program constituted an impermissible infringement on Edison's management prerogatives. Here, the PSC has not modified any proposal put forth by Edison or Consumers and has not compelled either utility to engage in any specific management practice.

Moreover, the PSC's order authorizing retail wheeling does not compel Edison or Consumers to enter into any particular contract. Any arrangement made by a customer for the purchase of power to be transmitted by either utility's lines must be approved in advance by the PSC. While the experimental program will require Edison and Consumers to transmit power purchased by a customer from a third-party provider, the PSC's order does not compel either utility to provide service to a customer it does not currently serve. Requiring Edison and Consumers to unbundle operation and transmission services is not equivalent to ordering that new facilities be constructed or that an

existing facility cease operations. Cf. *Huron Portland Cement Co, supra; Union Carbide, supra.* The PSC's order does not dictate the substance of management decisions and, thus, is lawful and reasonable.

FEDERAL PREEMPTION

Edison argues that the PSC's authority to implement a retail wheeling program is preempted by federal law. Section 201(b)(1) of the FPA, 16 USC 824(b)(1), grants the FERC jurisdiction over both the "transmission of electric energy in interstate commerce," and the facilities for such transmission. Even transmission that occurs over local distribution facilities is subject to federal jurisdiction if the transmission also flows over interstate facilities at some point. *Consolidated Edison Co of New York, Inc,* 15 FERC ¶ 61,174, p 61,405 (1981). Edison notes that its electric transmission facilities are connected to facilities in other states; therefore, interstate electricity is commingled across its facilities. Edison argues, accordingly, that the PSC's assertion of jurisdiction must yield to the FERC because jurisdiction over interstate commerce cannot be divided. *Mississippi Power & Light Co v Mississippi ex rel Moore,* 487 US 354; 108 S Ct 2428; 101 L Ed 2d 322 (1988).

We disagree with Edison's argument. Congressional intent determines whether federal law preempts state law. A federal agency cannot go beyond its authority to preempt state law. *Louisiana Public Service Comm v Federal Communications Comm,* 476 US 355, 374; 106 S Ct 1890; 90 L Ed 2d 369 (1986). While it is undisputed that pursuant to § 201(b)(1) federal regulation extends to transmission of electric energy in interstate commerce, § 201(b) also establishes that

the FERC does not have jurisdiction over local distribution facilities. The 1992 amendments of the FPA, particularly §§ 212(g) and (h), 16 USC 824k(g) and (h), prohibit the FERC from issuing any order inconsistent with any state law governing retail marketing areas of electric utilities or from requiring the transmission of electric energy to any ultimate consumer.

FERC Order 888, 61 Fed Reg 21540 (May 10, 1996), and Order 888-A, 62 Fed Reg 12274 (March 14, 1997), establish that the issue of federal versus state jurisdiction over retail wheeling programs is complex and not yet totally settled. In Order 888 the FERC declined to address the specific issue whether states have the authority to order retail wheeling. The FERC did not deviate from this position in Order 888-A. That order acknowledged that some states have implemented retail wheeling and anticipates that more states will do so. The FERC indicated that while it retains jurisdiction over transmission of electric energy in interstate commerce, it will give deference to tariffs filed with and approved by states as a result of implementation of retail wheeling programs.

More recent authority, *Consumers Energy Co*, 80 FERC ¶ 61,121, pp 61,384-61,385 (1997), lends further support to the conclusion that federal law does not preempt the PSC's authority to authorize retail wheeling. In that order, the FERC dismissed a retail direct access tariff submitted for filing by Consumers Energy because it was a tariff for the use of local distribution facilities in a retail wheeling program and not for the use of transmission facilities in interstate commerce. The order recognized that the FERC retains jurisdiction over transmission facilities used in inter-

state commerce, while jurisdiction over local distribution facilities remains with the state.

Neither federal statutory authority nor FERC regulatory authority precludes states from implementing retail wheeling programs. Accordingly; the PSC's order holding it was not precluded by federal preemption from implementing a retail wheeling program is neither unlawful nor unreasonable.

### CERTIFICATE OF PUBLIC CONVENIENCE AND NECESSITY

Dow and ABATE argue that Act 69, MCL 460.501 *et seq.*; MSA 22.141 *et seq.*, does not require a third-party provider to obtain a CPCN before it can engage in a retail wheeling transaction either with an unaffiliated customer or with an affiliated entity, because retail wheeling does not involve the sale of energy to the public. They assert that *Nat'l Steel Corp, supra,* establishes that the requirements of Act 69 do not apply to private, voluntary purchases of energy involving one or only a few buyers, and that regulating a third-party provider in a retail wheeling context is not in the public interest and serves no public policy function. Accordingly, they conclude that because a retail wheeling contract is a private transaction, requiring a third party provider to obtain a CPCN would not further the goal of Act 69 of avoiding wasteful duplication of services.

Furthermore, Dow and ABATE contend that a third-party provider need not obtain a franchise from a municipality in which its retail customer or affiliated entity is located, because a third party's sale of power to a customer located in a host utility's service area does not constitute the carrying on of a local business under MCL 460.502; MSA 22.142, and that, because a

third-party provider need not obtain a CPCN, it need not obtain a franchise.

We hold that Act 69 requires a third-party provider to obtain a CPCN before engaging in retail wheeling. Section 1 of Act 69, MCL 460.501;   MSA 22.141, defines a "public utility" as a person or corporation "owning or operating in this state equipment or facilities for producing, generating, transmitting, delivering or furnishing gas or electricity . . . to or for the public for compensation." Section 2 of Act 69, MCL 460.502; MSA 22.142,  provides that "[n]o public utility shall . . . render any service for the purpose of transmitting or carrying on a local business either directly, or indirectly" without first obtaining a CPCN. A third-party provider, even one located outside Michigan, meets the definition of "public utility." A contract for the sale of power falls under the definition of "facilities" in § 1. *Hartford Electric Light Co v Federal Power Comm*, 131 F2d 953 (CA 2, 1942).  The absence of a third-party provider's plant or system in the territory in which the customer or affiliated entity is located does not relieve the provider of the obligation to obtain a CPCN. In *In re Alpena Power Co*, 111 PUR 4th 458 (1990),  a customer in the Village of Hillman, located in Alpena Power Company's territory, constructed a pipeline to connect with Consumers Power's line outside the village limits. Consumers supplied backup power to the single customer at the point of connection. The PSC held that Consumers was required to obtain a CPCN. While not a retail wheeling case, the rationale of *Alpena Power Co* supports the PSC's decision. By requiring a third-party provider to obtain a CPCN notwithstanding the fact that its physical facilities do not invade the host utility's service

area, the PSC can prevent the duplication of arrangements for the sale of power and preclude uneconomic involvement.

A retail wheeling contract is not a private transaction; thus, *Nat'l Steel Corp, supra*, is distinguishable. In that case, National Steel sought to transport natural gas to its own facility over its own pipeline. The pipeline was to be built and operated by Novacorp. This Court held that neither entity was required to obtain a CPCN because the transaction did not involve a sale to the public. 204 Mich App at 635-636. In a retail wheeling transaction, including a sale to an affiliated entity, the ability of a third-party provider to deliver electric power to an end-user would be dependent on an integrated system of generation, transmission, and distribution facilities. The end-user does not control all those facilities. Rather, the facilities are owned by public utilities, were constructed with the aid of utilities' eminent domain power, have monopoly characteristics, and are highly regulated. Each transaction in the PSC's retail wheeling experiment will require extensive use of public utility facilities.

We reject as unpersuasive any attempt to analogize retail wheeling of electric power to the natural gas industry. Such an attempt fails to recognize fundamental differences between the industries. The FERC comprehensively regulates the natural gas industry and has the authority to issue CPCNs in that industry. Act 69 is preempted in that area. *Michigan Consolidated Gas Co v Panhandle Eastern Pipe Line Co*, 887 F2d 1295 (CA 6, 1989).

Const 1963, art 7, § 29 requires a party operating a public utility to obtain a franchise if it seeks to use the highways, streets, or other public places in the

municipality, or if it seeks to transact a local business within the municipality. Section 3 of Act 69, MCL 460.503; MSA 22.143, requires an applicant for a CPCN to first obtain a franchise from the municipality in which it desires to operate. Given our conclusion that a third-party provider is a public utility and is required to obtain a CPCN before engaging in a retail wheeling transaction, it follows that a third-party provider must also first obtain a franchise.

Regulation of third-party providers is in the public interest and serves a legitimate public policy function. The PSC's order authorizes a five-year experimental retail wheeling program. A principal purpose of the experiment is to determine whether the use of retail wheeling will result in more and better competition. For that reason, the PSC must be able to track the arrangements made by customers and to collect data to evaluate the experiment. Allowing third-party providers to work without regulation would thwart the PSC's efforts. The PSC, recognizing that complying with Act 69 could cause practical difficulties, has provided for the filing of an application for a blanket CPCN. A blanket CPCN would apply to all sales of electric power made by a third-party provider. We defer to the PSC's administrative expertise in constructing the experiment. *Yankoviak v Public Service Comm*, 349 Mich 641, 648; 85 NW2d 75 (1957).

### TAKING OF PROPERTY WITHOUT COMPENSATION

Edison and Consumers argue that the PSC's order implementing retail wheeling takes their property without just compensation because it compels them to accept power provided by a third party and to transport that power through their systems and that

the physical occupation of their systems with that power, reduces their ability to use their systems for their own purposes, thereby constituting a taking of their property. *Loretto v Teleprompter Manhattan CATV Corp*, 458 US 419; 102 S Ct 3164; 73 L Ed 2d 868 (1982). Moreover, they argue that the PSC's order violates US Const, Ams V and XIV in that it requires them to involuntarily devote their property to a new business and to expand their services beyond those they had been willing to undertake.

We disagree. A public utility is subject to extensive regulation. Michigan law has long required regulated companies to connect their equipment and services with those of other providers. Because a public utility is a regulated entity and its property is used for a public purpose, such reasonable interference is constitutional. See, e.g., *Michigan State Telephone Co v Michigan Railroad Comm*, 193 Mich 515; 161 NW 204 (1916). Moreover, in *Energy Ass'n of NY v Public Service Comm of NY*, 169 Misc 2d 924; 653 NYS2d 502 (1996), the court held in dictum that requiring utilities to carry competitors' electricity did not constitute a taking. While not binding, we find this authority supportive of the PSC's decision.

The reliance by Edison and Consumers on cases such as *Loretto, supra*, and *Bohn Lumber Products Co v Public Service Comm*, 317 Mich 174; 26 NW2d 875 (1947), is misplaced. In *Loretto, supra*, the Supreme Court held that a requirement that private landlords allow cable television companies to attach equipment to their properties constituted a taking of the property. In *Bohn, supra*, our Supreme Court held that a railroad could not be compelled to renew or continue a lease of property to a customer. A public

utility is not analogous to a private landlord because a utility's property is regulated and used for the public benefit.

The PSC's order establishes that Edison and Consumers will be compensated for their participation in any retail wheeling arrangement. The utilities have not shown that the PSC's order is unlawful or unreasonable.

IMPAIRMENT OF CONTRACT

Consumers argues that the PSC's order authorizing retail wheeling violates the Impairment of Contract Clauses of the United States Constitution, US Const, art I, § 10, and the Michigan Constitution, Const 1963, art 1, § 10. Consumers contends that the PSC's order forces it to use its facilities to transmit power supplied by third-party providers and thus impairs its interconnection agreements with several utilities.

This issue was not argued before the PSC. Nevertheless, we find this issue to be without merit. Consumers' assertion that any retail wheeling arrangement would substantially impair its interconnection agreements is unsubstantiated and speculative. We have rejected the impairment argument in previous cases. See, e.g., *Antrim Resources v Public Service Comm*, 179 Mich App 603, 616-617; 446 NW2d 515 (1989); *North Michigan Land & Oil Corp v Public Service Comm*, 211 Mich App 424, 444; 536 NW2d 259 (1995).

RATES

Edison argues that the PSC has fixed unlawful and unreasonable rates. Edison argues that the PSC's adoption of an embedded-costs approach to calculate capacity reservation charges results in rates that do

not provide just compensation for the taking of its property. It asserts that because the embedded-costs approach is used appropriately when all of a utility's assets are valued for purposes of setting a single requested rate, and because in the context of retail wheeling customers can purchase electricity at unregulated rates, assets should be valued according to market forces, and that such a violation is best determined through use of the reproduction-cost method.

We disagree. Rates must be just and reasonable. The PSC's ratemaking authority operates in a broad "zone of reasonableness." *Michigan Bell Telephone Co v Public Service Comm*, 332 Mich 7, 26, 35-36; 50 NW2d 826 (1952). The retail wheeling program authorized by the PSC is experimental in nature. Rates established in an experimental program are not reviewed under the same strict standards as are rates in a permanent program. *Great Lakes Steel Div of Nat'l Steel Corp v Public Service Comm*, 130 Mich App 470, 481-482; 344 NW2d 321 (1983). While testimony regarding the appropriate cost approach differed, the PSC was entitled to choose between differing views. *Id.* The PSC's order adopting the embedded-costs valuation method does not result in rates that are unjust or unreasonable.

Affirmed.